[No. B009164. Second Dist., Div. Three. June 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES SMITH, Defendant and Respondent;
DENNIS HALE et al., Real Parties in Interest and Appellants.

1214

---

**COUNSEL**

Lorn E. Aiken for Real Parties in Interest and Appellants.

No appearance by Plaintiff and Respondent.

John D. O'Loughlin, under appointment by the Court of Appeal, for Defendant and Respondent.

---

**OPINION**

**KLEIN, P. J.**—Real parties in interest and appellants Dennis Hale and Hale Bail Bonds (collectively Hale) appeal from an order of the superior court

directing Hale to return a bail bond premium to defendant and respondent James Smith, aka Marvin Alston (Smith).[1]

■ Good cause for surrender under Penal Code section 1300[2] is not limited to a defendant's failure to appear or violations of a court order. Further, to constitute good cause, the failure to appear or violations of a court order need not have occurred in any particular department or division of the court.

Because the trial court abused its discretion in ordering the return of the premium, the order is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 1984, Hale posted bail on Smith's behalf in four criminal cases: one in Division 50 of the Los Angeles Municipal Court, one in Department 117 of the Los Angeles Superior Court, and two in divisions of the Los Angeles Municipal Court in Van Nuys. Subsequently, Hale received notice from the clerk of the Los Angeles Municipal Court that Smith had failed to appear as required in Division 50.

Hale attempted to contact Smith without success, and hired investigators who located Smith and took him into custody. Smith was surrendered in Division 50 of the Los Angeles Municipal Court, and a $500 bond was exonerated pursuant to section 1300, which section provides for the surrender of defendants and the exoneration of bail. Hale was assessed $25 court costs plus attorney's fees for Smith's failure to appear.

Hale thereafter also surrendered Smith in Department 117 of the Los Angeles Superior Court on July 10, 1984, prior to the date Smith was due to appear in said department, and a $10,000 bond was exonerated. On August 23, 1984, in Department 117, Smith's motion for return of the $1,000 paid as premium for the $10,000 bond, pursuant to section 1300, subdivision (b), was heard and granted.

At the hearing, Hale testified to the following efforts to contact Smith: he tried the telephone number Smith provided at the time of release on bail but it had been disconnected; he went to the address Smith had given but Smith had moved without leaving any forwarding address; when Hale telephoned Smith's "common law" wife at her place of employment, she refused

---

[1] On this court's motion, an attorney was appointed to represent Smith's interests because he cannot be located and is apparently indigent.

[2] All subsequent references are to the Penal Code, unless otherwise indicated.

to disclose Smith's whereabouts; Hale then hired investigators who took about a week to locate Smith in the residence of relatives; when they confronted Smith, he denied he was the person they were seeking. Upon Smith's being located, Hale caused Smith to be taken into custody and surrendered pursuant to section 1300.

On his own behalf, Smith admitted he did not attempt to notify Hale of his change of address. Smith further testified he had been present in Division 50 on the scheduled date, but fell asleep, and the bailiff had informed him to come back the next day. Smith still owed Hale money, so he did not call him right away, and when Smith tried to call Hale about a week later, there was no response. Smith did not return to Division 50. He denied concealing his identity to the investigators.

Finding a lack of good cause to surrender Smith because Smith had not failed to appear in Department 117 and had not violated any order of that department, the trial court ordered the return of the premium unless Hale filed a notice of appeal forthwith. This appeal followed.

## CONTENTIONS

Hale contends good cause existed to surrender Smith, making it an abuse of discretion for the trial court to order return of the premium.

## DISCUSSION

### 1. *General principles.*

*People* v. *Surety Ins. Co.* (1983) 139 Cal.App.3d 848 [189 Cal.Rptr. 89], reviews the scheme of bail. "A bailbondsman [*sic*] posts an undertaking. A corporate surety agrees to pay a set sum if a defendant fails to appear. The failure to appear triggers bail forfeiture and issuance of a bench warrant. The police seek the missing defendant. The bail bondsman has six months to return the defendant to court or to show an inability [to do so]. The court then may make such order as to the bail as justice may require. If the defendant is not brought before the court within the six-month period and his absence is not satisfactorily explained, the order forfeiting bail is carried into execution by way of summary judgment." (*Id.,* at p. 852.)

The pertinent statute here is section 1300, which provides in relevant *part:* "(a) At any time before the forfeiture of [the] undertaking, . . ., the bail . . . may surrender the defendant in . . . exoneration, . . .: [¶] . . . . [¶] (b) Notwithstanding subdivision (a), if the court determines that *good cause* does not exist for the surrender of a defendant who has not failed to

appear or has not violated any order of the court, it may, in its discretion, order the bail . . . to return to the defendant . . ., all of the [premium] so paid or any part of it." (Italics added.)

The statute does not define "good cause," other than as failure to appear or violation of a court order. Further, the parties have not cited any case, nor has diligent research disclosed any, which construes "good cause," or lack thereof, so as to require return of the premium to a defendant pursuant to section 1300, subdivision (b).[3]

It appears the Legislature sought to provide a remedy against potential abuse by a bondsperson of the broad power to surrender a defendant into custody and terminate liability at any time before forfeiture.

That such power is extraordinary has long been recognized by courts. ■ *People* v. *Walling* (1961) 195 Cal.App.2d 640 [16 Cal.Rptr. 70], quoted from the United States Supreme Court decision of *Taylor* v. *Taintor* (1873) 83 U.S. (16 Wall.) 366, 371 [21 L.Ed. 287, 290], as follows: "'When bail is given, the [principal] is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest, by the sheriff, of an escaping prisoner.'" (*People* v. *Walling, supra*, at p. 645.)

Prior to the enactment of section 1300, subdivision (b), a defendant surrendered without good cause had no realistic remedy against a bondsperson unjustly enriched by such conduct. ■ However, the availability of the remedy provided a defendant by section 1300, subdivision (b) still rests within the discretion of the trial court which must determine the good cause issue on a case-by-case basis.

2. *Analysis of the statute discloses the trial court retains discretion to deny return of the premium, even where defendant has not failed to appear and/or has not violated any court order.*

It is implicit in the statute that even where a defendant has *not* failed to appear and has *not* violated any order of the court, good cause may exist

---

[3]Pursuant to Evidence Code section 452, subdivision (c), this court has judicially noticed certain official acts of the Legislature in its quest for a reasonable interpretation of the term "good cause."

so as to preclude the return of the premium. As set forth *ante,* "*if* the court determines that good cause does not exist for the surrender of a defendant who has not failed to appear or has not violated any order of the court, *it may, in its discretion,* order the bail . . . to return . . ., *all . . . or any part* of [the premium]." (§ 1300, subd. (b), italics added.)

The Legislature's choice of the words "if," "may," "discretion" and "all or any part," given their ordinary and proper meaning (*People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 626 [126 Cal.Rptr. 505]), clearly leaves in the trial court the discretion *to deny* the return of the premium, or a part of it, *upon a reasonable showing.*

In other words, good cause will ordinarily exist where a defendant *has* failed to appear or *has* violated an order of the court, absent a proper showing of a justifiable excuse put forth at the hearing. However, those are *not* the sole events which may give rise to good cause. The trial court still has discretion to find good cause for surrender, for other good and sufficient reasons.

Had the Legislature intended to remove all discretion from the trial court, it would have used mandatory language to require return of the premium in a situation where a defendant has not failed to appear and has not violated any court order.

Were the section to be interpreted otherwise, absurdities would result. Considered hypothetically, if a bondsperson learns a defendant had liquidated all assets and purchased a one-way plane ticket abroad, but had not yet failed to appear nor violated any court order, such actions would not provide good cause for surrender. "'"[S]tatutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief and absurdity."'" (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].)

 3. *Inquiry into whether a defendant failed to appear is not limited to whether defendant failed to appear in a particular court.*

Section 1300, subdivision (a)(3) goes on to provide: "The officer to whom the defendant is surrendered shall, within 48 hours of the surrender, bring the defendant before the court in which the defendant is next to appear on the case for which he has been surrendered."[4]

---

[4]The application of this provision is ambiguous in a situation such as this, where a bondsman has posted bail for a defendant on multiple charges pending in various divisions and departments of the Los Angeles Municipal and Superior Courts, respectively. While the record is thin, Hale apparently complied with this requirement by surrendering Smith in Department 117 where Smith was next to appear.

Apparently in reliance on this passage, Smith contends the language in subdivision (b) regarding a defendant's failure to appear as good cause for surrender relates to a prior failure to appear in the same court where the defendant is next to appear in the case for which the defendant has been surrendered.

Smith's narrow suggestion that a single department within a court constitutes the proper interpretation of "the court" is unpersuasive, and would create a rule that would be unrealistic and unworkable. However, there is no elucidation of the words in section 1300, subdivision (b), where it uses the language "not failed to appear or has not violated any order of *the court*, . . ." (Italics added.) ■ Because the Legislature's purpose cannot be ascertained from the face of the statute, a fair and reasonable interpretation must be given the statute with due regard to the language used and the purpose sought to be accomplished. (*People* v. *Mel Mack Co., supra,* 53 Cal.App.3d at p. 626.)

*Von Schmidt* v. *Widber* (1893) 99 Cal. 511, 512 [34 P. 109], defined a court as "a tribunal presided over by one or more judges, for the exercise of such judicial power as has been conferred upon it by law." Whenever a judge "is present at the place designated for the transaction of judicial business, and there assumes to transact such business, his acts may be considered as the acts of the court of which he is a judge." (*Id.,* at p. 514.)

Witkin makes the observation that "[t]here is *one superior court* in the county, though different judges thereof may sit in separate departments." (2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 184, p. 209.) Obviously, this approach makes sense, and a failure to appear in a department thereof, or a violation of an order of a department, constitutes an affront to the *superior court.*

To hold otherwise would cause havoc in court systems composed of many departments from which judges change assignments, go on vacation, and which departments sometimes are temporarily closed. ■ Therefore, we conclude that a defendant's failure to appear in *any department* of the superior court provides a bondsperson good cause for surrender in accordance with section 1300, subdivisions (b) and (a)(3).

The next issue that must be addressed is whether a defendant's failure to appear in a *division* of a *municipal court* provides good cause for the surrender of said defendant in a *department* of a superior court. That fact situation is the one before us.

We believe the question should be answered in the affirmative. A municipal court is no less a court than the superior court, and a failure to appear in

a *municipal* court is no less a failure to appear in *court,* in contemplation of section 1300, subdivision (b).

 Further, the failure of a defendant to appear in a municipal court also triggers the forfeiture of any bail bond posted guaranteeing appearance, and the issuance of a bench warrant for the arrest of the errant defendant. There is no reason in logic to differentiate between a superior and a municipal court for the application of the statute under discussion; no purpose would be served other than to denigrate the functions of a municipal court.

 Therefore, we interpret section 1300, subdivisions (b) and (a)(3) as applying to the fact situation before us, wherein Smith failed to appear in Division 50 of the Los Angeles Municipal Court and was surrendered by Hale in Department 117 of the Los Angeles Superior Court where he was next to appear, thus providing good cause for the surrender. To hold otherwise would allow a defendant to flout the obligations of bail with impunity and be rewarded in the process.

Separately, even accepting Smith's narrow interpretation of "the court" for purposes of establishing good cause for surrender, such a construction would be unavailing; as discussed *ante,* at part 2, the trial court still has discretion to find good cause for *other* reasons, which reasons could include failure to appear in *another* court.

4. *Trial court ruling was an abuse of discretion.*

At the hearing on Smith's motion for return of the $1,000 premium on the $10,000 bond, the trial court had "no quarrel with the right to seize [Smith] because he failed to appear for the $500 [case pending in Division 50]." The trial court further agreed with Hale that when a defendant on a $10,000 bond fails to appear in other cases, fails to keep the bondsman posted of his whereabouts, and denies his identity when he is attempted to be arrested, the bondsman has a right to surrender the defendant on the $10,000 bond.[5]

However, in ordering the return of the premium on the $10,000 bond, the trial court found Smith "had not failed to comply with any terms and conditions for that particular bond so far as court appearances or jeopardizing the ten thousand. [¶] . . . . [¶] . . . I don't find good cause for surrendering him on this case. I don't find that there is any jeopardy to attach to the bail bond agency as a result of having posted this particular bond."

---

[5]Such circumstances are not prerequisites to the surrender of a defendant. As set forth, *ante,* the bondsman may surrender the defendant *at any time* before forfeiture, with or without good cause. (§ 1300, subd. (a).)

■ The trial court's ruling constituted an abuse of discretion, which arises when the action of the court "'exceeds the bounds of reason, all of the circumstances being considered.'" (*People* v. *Mitchell* (1984) 152 Cal.App.3d 433, 438 [199 Cal.Rptr. 507].) The trial court erred in limiting its focus to Smith's conduct with respect to the $10,000 bond guaranteeing his appearance in Department 117. As indicated, a determination of "good cause" for surrender cannot be limited to an inquiry of whether a defendant has failed to appear or violated any order of a particular department or division within the court system.

■ Good cause existed to surrender Smith not merely for the failure to appear in Division 50, but also because of Smith's disappearance without any forwarding address or phone number, which materially altered the risk to Hale on the $10,000 bond.

Smith further argues no good cause existed, because he was in fact present in Division 50, although asleep. The trial court did not specifically find on that issue as its ruling was limited to a lack of good cause based on Smith's performance with respect to Department 117. However, we reject Smith's contention. If Smith were asleep in court and thus unable to participate in the business of the court, he cannot be said to have made an appearance for the purposes under discussion here.

Smith also submits there was no good cause, because at the time of the surrender in Department 117, Smith was already in custody relating to another matter, letting Hale "off the hook" on the $10,000 bond. This contention is similarly without merit; were Smith to be subsequently released, Hale's suspended obligation would be revived and Hale's bond would again be at risk of forfeiture. (*People* v. *Meyers* (1932) 215 Cal. 115, 118 [8 P.2d 837]; *People* v. *Ford* (1980) 113 Cal.App.3d 429, 432 [170 Cal.Rptr. 216].)

a. *The trial court may have predetermined the sole issue before it.*

At the time of surrender, after the trial court declared the $10,000 bond exonerated, Smith inquired: "May I ask you a question? I'd like—the bond that he took, I don't get none of that money back."

The trial court responded: "You can sue him for the recovery. He's supposed to return that money to you."

Under section 1300, subdivision (a)(3), the trial court "shall advise [the defendant] of the authority of the court, . . . ., to order return of the premium paid . . ., or any part of it."

Here, the trial court went beyond informing Smith of his right to return of the premium. Its statement that Hale was "supposed" to refund the money indicates it may have predetermined this issue prior to receiving evidence at the hearing on the motion some six weeks later. (See, e.g., *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 934 [219 Cal.Rptr. 562].)

## CONCLUSION

Good cause existed for Hale to surrender Smith. Section 1300 does not limit a determination of good cause to an inquiry of whether a defendant has appeared in, and complied with, the orders of the particular department or division of the court in which the defendant was surrendered. Further, under the statute, failure to appear and noncompliance with a court order are not the sole events which may give rise to good cause for surrender. Absent those violations, other circumstances may also trigger good cause.

## DISPOSITION

The order is reversed. Hale to bear costs on appeal.

Danielson, J., and Arabian, J., concurred.