[No. B177189. Second Dist., Div. Two. Oct. 17, 2005.]

RICHARD DAVID KIPERMAN, Plaintiff and Appellant, v.
ERIK ARNOLD KLENSHETYN, Defendant and Respondent.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Plaintiff and Appellant.

Law Offices of Perry C. Wander and Perry C. Wander for Defendant and Respondent.

OPINION

**BOREN, P. J.**—This is an appeal by a bail bond agent, Richard David Kiperman, from an order directing the return of bail bond premiums in the amount of $17,000. He contends the trial court abused its discretion in (1) ordering relief from liability and return of the premium paid on the first bail bond, and (2) ordering return of the premium paid on the second bail bond when good cause for surrender was shown. We agree and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

In December of 2003, defendant Erik Arnold Klenshetyn was charged in a complaint with making terrorist threats, being a felon in possession of a firearm, possessing narcotics for sale, and possessing marijuana. Bail was set at $85,000, and Seneca Insurance Company posted the bond for defendant's release from custody. At arraignment on January 8, 2004, the trial court granted the prosecutor's motion to increase bail to $250,000, and remanded defendant to custody.

On January 9, Accredited Surety and Casualty Company (Accredited) posted a bail bond in the amount of $250,000, for defendant's release. The premium charged for the bond was $25,000. Several days later, the defendant, who was out of custody and on Accredited's bail bond, appeared in court, and the case was continued until February 23.

On February 17, however, defendant's case was added to the court calendar, at which time defendant (in custody) and his counsel appeared and asked that the appearance set for February 23 be advanced. An amended complaint had been filed against the defendant, adding a charge of stalking. Defendant had been arrested on a warrant and was in custody on that new charge, with bail now set at $1 million. At the conclusion of the hearing, the defendant was remanded to custody and bail was exonerated.

On February 19, the court reduced the bail previously set at $1 million to $250,000. The defendant was remanded to custody, and the case was continued to March 15, for a preliminary hearing.

However, on February 23, the case was again added to the calendar on defendant's motion that the court set aside exoneration of the bail bond on the grounds that the clerk of the court, as distinguished from the judge, was without jurisdiction to exonerate the defendant's posted bail of $250,000. The court denied the motion because "it's already been exonerated [and] it's already been put in the system. Were I to do that, I think the county would lose that money." But the court relieved the defendant of liability on that bond and ordered the return of the premium paid by the defendant, noting that he would have to post a new bond for $250,000. Soon thereafter, Accredited posted a new bail bond in the amount of $250,000 for the defendant's release.

After several continuances, on May 13, the defendant was scheduled to appear but failed to do so because he had been arrested in another case, in which bail had been set at $1 million. The initial case was continued to May 25, with the bench warrant held and bail to stand. On May 25, the court heard a motion to suppress and continued the matter to June 10.

On June 10, the bail agent, Richard Kiperman, appeared in court and gave notice of surrender of the defendant for good cause pursuant to Penal Code section 1300,[1] on grounds that the surety's risk was increased by the defendant's recent arrest on May 13, and that he had been arrested while on a Greyhound bus leaving town. In further support of the surrender of the defendant, Kiperman filed a declaration (dated June 22), indicating the following details: that on May 6 Kiperman learned that there had been a $1 million warrant out for defendant's arrest; that he tried to contact the defendant, but his cell phone was no longer in service; that on May 11 defendant's sister said she did not know where he was; that Kiperman received an anonymous tip the defendant was leaving town on a Greyhound bus on the evening of May 12; that Kiperman immediately informed the Los Angeles Police Department (LAPD) that he knew the probable whereabouts of the defendant, who had a $1 million warrant out for his arrest; that an LAPD officer contacted Kiperman late in the evening on May 12 to advise him that the defendant had been arrested on a Greyhound bus with a ticket for Las Vegas; and that there were no return trips listed on the Greyhound bus schedule that would have returned the defendant to Los Angeles in time for his May 13, 8:30 a.m., court appearance.

At the hearing on June 29, the trial court found that the surety had "shown good cause" for surrender of the defendant, but indicated that the defendant is "entitled to have his premiums returned and his bail that was actually posted." Kiperman replied as follows: "The court, I believe, ordered the bail to be returned on the first bond. And on the same day we posted another bond for the same amount of money, for $250,000. . . . The complete moneys paid to us were for a total [of] $17,000 on both bonds. Both premiums were $25,000 each. On the first bond, rather than returning, as the court ordered, at that time $12,500 that had been paid, we attributed that money to his new bond, [$]12,500. Subsequent to that, we had payment of $3,500 and another payment by the defendant of a thousand dollars, equaling $ 17,000 on the second bond. So, in essence, we have no money on the first, as per the order of the court, to return the premium on that, inasmuch as any moneys paid to us were attributed to the second bond, of which we have before the court our

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

request to exonerate based on . . . the indemnitor wanting to get off the bond based on the arrest of the defendant, as well as our increased hazard on our bond for the same reason. Therefore, we have collected an aggregate of $17,000 for both bonds total, and . . . are actually short $8,000 on the second bond [and] have no money on the first bond which was exonerated by the court."

Kiperman further explained that under the contract between the defendant and the surety, the premium is fully earned upon the defendant's release on a bail bond. The court responded that there was not "any language in the law that I reviewed that talks about earning your premium on this." It also remarked, "[W]hatever agreement that the two of you had, contractual agreement, I don't see that the court is part of that." The court then ordered that the entire amount of the $17,000 paid for the premiums on both of Accredited's bail bonds be returned to the defendant.

## DISCUSSION

*General principles*

■ *People v. Smith* (1986) 182 Cal.App.3d 1212 [228 Cal.Rptr. 277], explained the general bail bond procedures as follows: " 'A bailbondsman [*sic*] posts an undertaking. A corporate surety agrees to pay a set sum if a defendant fails to appear. The failure to appear triggers bail forfeiture and issuance of a bench warrant. The police seek the missing defendant. The bail bondsman has six months to return the defendant to court or to show an inability [to do so]. The court then may make such order as to the bail as justice may require. If the defendant is not brought before the court within the six-month period and his absence is not satisfactorily explained, the order forfeiting bail is carried into execution by way of summary judgment.' " (*Id.* at p. 1216.)

The applicable statutory provision is section 1300, which provides in pertinent part, that a bail bondsman may surrender a criminal defendant for whom it has posted bail at any time before bail is forfeited. (§ 1300, subd. (a).) Nonetheless, the statutory scheme also provides that if the court determines that "good cause does not exist for the surrender of a defendant who has not failed to appear or has not violated any order of the court, it may, in its discretion, order the bail or the depositor to return to the defendant or other person who has paid the premium or any part of it, all of the money so paid or any part of it." (§ 1300, subd. (b).)

The legislative purpose behind section 1300, subdivision (b) was to temper a bonding company's virtually unlimited power, which power is based on the venerable notion that its dominion over the defendant merely continues the original imprisonment and therefore permits the bonding company to surrender a defendant into custody and terminate liability *at any time before forfeiture*. (*People v. Smith, supra,* 182 Cal.App.3d at pp. 1216–1217; see *Taylor v. Taintor* (1872) 83 U.S. 366, 371 [21 L.Ed. 287].) This extraordinary power is tempered by the statutory "good cause" requirement (§ 1300, subd. (b)), which operates as a check on the potential abuse of that power.

*The first bail bond*

As Kiperman properly contends, the trial court abused its discretion in ordering the defendant relieved of liability and directing the return of the premium on the first bond.

In the present case, on January 9, 2004, Accredited posted the first bond in the amount of $250,000, for the defendant's release from custody. He was free on that bond until February 17, when the trial court remanded him to custody after an amended complaint was filed and bail was raised to $1 million.

■ Once bail was raised to a figure greater than the amount posted, the trial court had no choice but to remand the defendant, because a person may not be released on bond for an amount less than the amount of the bail ordered by the court. (See *County of Merced v. Shaffer* (1919) 40 Cal.App. 163, 167–168 [180 P. 342].) Upon remand of the defendant because of the higher bail, the first bond in the amount of $250,000 was exonerated by operation of law. This is so because the responsibilities of a surety are based upon the surety's custody of the person bailed (*People v. McReynolds* (1894) 102 Cal. 308, 311–312 [36 P. 590]), and Accredited could no longer have custody over the defendant who had been remanded.

At the point when the defendant was remanded to custody because of the amended complaint, Accredited had been at risk during the defendant's five-week liberty on the bond. The surety thus fully earned the premium on the bond. Since in the event a defendant flees the surety is liable for the full amount of the bail, regardless of how long the defendant has been on bail, the agreement between the surety and the defendant (or his guarantors) similarly justifies loss of all, rather than just some portion, of the premium.

We also note that Accredited did not actually surrender the defendant on the first bond. Rather, it was the trial court that caused the defendant to return to custody due to the new stalking charge and the consequent increase in bail to $1 million. It was no fault of the surety that the defendant was back in custody, and there was thus no issue of good cause to surrender on the part of the surety. The authority in section 1300 for the court to consider return of the premium applies only where the surety has surrendered the defendant to custody without adequate good cause.

■ Where, as here, there was no surrender by the surety since the defendant was returned to custody by the court's action in raising the bail and remanding the defendant, the court had no statutory authority to exercise any discretion regarding the premium. Accordingly, the trial court abused its discretion by relieving the defendant of liability on the first bond and ordering return of the premium paid by the defendant on that bond.

*The second bail bond*

Accredited also contends the trial court abused its discretion in ordering return of the premium paid on the second bail bond because it established good cause for the defendant's surrender. We agree.

The second bond was posted in February of 2004 in the amount of $250,000. In early May, however, the surety discovered that there was now a $1 million warrant out for the defendant's arrest, that the police had searched the apartment of defendant's sister looking for him, that the defendant's cell phone number was no longer in service, that defendant's sister advised the surety the defendant had disappeared, and that the police found the defendant on a Greyhound bus headed for Las Vegas the night before his scheduled court appearance in Los Angeles.

Based on the loss of contact with the defendant, the new $1 million warrant in a new case, and the defendant's apparent attempt to flee to Las Vegas, the bail agent had abundant "good cause" (§ 1300, subd. (b)) to surrender the defendant. Accordingly, despite the fact that the defendant had not yet failed to make a court appearance, there was good cause to believe the risk assumed by Accredited was substantially increased and the defendant's surrender was warranted. (See *People v. Smith, supra,* 182 Cal.App.3d at pp. 1217–1218.)

Accordingly, the trial court abused its discretion in ordering return of the premium paid on the second bail bond.

## <u>DISPOSITION</u>

The judgment (order under review) is reversed. Appellant Kiperman is entitled to costs on appeal.

Doi Todd, J., and Ashmann-Gerst, J., concurred.