[No. B186945. Second Dist., Div. Three. Feb. 22, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
LEXINGTON NATIONAL INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Brian T. Chu, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

ALDRICH, J.—

## INTRODUCTION

Appellant and surety Lexington National Insurance Company (Lexington) appeals from an order that denied its motion to vacate a summary judgment entered on a forfeiture of a bail bond which it had provided for criminal defendant Julio Duenas (Duenas). Lexington contends the trial court erred because the bail was exonerated when Duenas was placed "in custody" by an order of the court. We conclude that Duenas was not "in custody" and the bail was not exonerated. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual background.*

Duenas was charged with being a felon or addict in possession of a weapon and with possession of marijuana or hashish for sale. (Pen. Code, § 12021, subd. (a)(1); Health & Saf. Code, § 11359.)

On November 15, 2004, defendant and appellant Lexington posted a bail bond for Duenas's release from custody.

On November 24, 2004, Duenas appeared for arraignment. The following then occurred:

"The Court: Case Number BA273742, People versus Julio Duenas. [¶] Good morning. Julio Duenas is your true and correct name, sir?

"[Duenas]: Yes.

"The Court: You're here for your arraignment today?

"[Duenas]: Yes.

"The Court: Do you have an attorney?

"[Duenas]: I need some time to get one.

"The Court: Okay. So you want to put your arraignment over? Is that what you're saying? [¶] . . . [¶]

"The Court: You want to continue your arraignment for a week?

"[Duenas]: Can you give me two weeks to get a lawyer?

"The Court: I don't think I'm going to give you that long, sir, because we're going to need to get this done fairly shortly.

"[The Prosecutor]: . . . [¶] Your Honor, the People are going to be seeking remand on this matter, based on the defendant's prior record, his unsatisfactory conditions on parole, the nature of the charge in the current offense, gang membership, [and] the fact that he poses a significant threat to the public in this matter.

"The Court: Sir, they are seeking to have you remanded into custody today. So would you like to have an attorney represent you for today so that that issue can be addressed? Would you like to have someone interview you from the public defender's office?

"[Duenas]: Can you give me a week to get a lawyer?

"The Court: Well, they want to have you remanded today, so I'm going to have to rule on that. So you may want someone from the public defender's office to represent you today on that issue, then you could still hire— assuming you qualify for the public defenders'[—you would] still be able to hire an attorney at some subsequent point.

"[Duenas]: Okay.

"The Court: What do you want to do?

"[Duenas]: Get a lawyer.

"The Court: You want to see if someone can interview you from the public defender's office?

"[Duenas]: Yeah.

"[The Prosecutor]: Your Honor, I just ask that the defendant be ordered not to leave the courtroom.

"[Duenas]: I'm not going to leave.

"The Court: Yes, sir. You are ordered not to leave the courtroom.

"The Clerk: He has to sit in the front row.

"[Duenas]: I'll be right here.

"The Court: Is there someone that could interview him to see if he qualifies?

"[The Prosecutor]: For the record, the defendant, who was just ordered not to leave the courtroom, just left the courtroom.

"The Court: He just left the courtroom? All right. Let's see if we can go get him."

About 20 minutes later, the matter was again called for calendar. Duenas could not be found. At the request of the People, the bond was forfeited and a bench warrant issued.[1]

### 2. *Procedural background.*

A notice of forfeiture was mailed to Lexington. Summary judgment was entered against Lexington on the forfeited bond.

Lexington moved to vacate the forfeiture, exonerate bail, and set aside the summary judgment. The trial court denied the motion. Lexington appeals from the denial order.[2] The County of Los Angeles appears on appeal as plaintiff and respondent.

## DISCUSSION

### *Duenas was not in custody for purposes of exonerating his bail.*

Lexington presents only one argument on appeal. It contends that the bail was exonerated because Duenas was "in custody" before he left the courtroom. This contention is not persuasive.

■ " 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citations.] 'In matters of this kind there should be no element of revenue to the state nor punishment of the surety.' [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

■ " 'A bail bond is in the nature of a contract between the government and the surety, in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. [Citation.] "In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and *at a specified time and place* . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the

---

[1] Penal Code section 1305, subdivision (a) reads in part: "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (1) Arraignment. [¶] (2) Trial. [¶] (3) Judgment. [¶] (4) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] (5) To surrender himself or herself in execution of the judgment after appeal."

[2] The order denying a motion to set aside a forfeiture is appealable. (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382 [59 Cal.Rptr.2d 777].)

amount of the bond." [Citation.]' (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58].) [¶] In other words, '[i]t is the obligation of the sureties on a bail bond to produce the principal at the time and the place *specified in the bond.* [Citation.]' " (*People v. Amwest Surety Ins. Co.* (2001) 87 Cal.App.4th 69, 71 [104 Cal.Rptr.2d 282], italics added.) When there is a breach of the contract between the government and the surety, the bond is enforced. (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 657–658.)

■ "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." (*Taylor v. Taintor* (1872) 83 U.S. 366, 371 [21 L.Ed. 287]; cf. *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939 [35 Cal.Rptr.3d 178].)

■ "When the bail has served its purpose, the surety will be 'exonerated,' i.e., released from the obligation. Exoneration normally occurs on termination of the proceedings in some manner or on return of the defendant to custody . . . . [Citations.]" (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 95, p. 294.) Thus, for example, bail will be exonerated when the action is dismissed against the defendant (Pen. Code, § 1384), when the trial court grants a motion to set aside the indictment or information (Pen. Code, § 997), when a defendant is committed after being convicted (Pen. Code, § 1166), and when a defendant appears for sentencing (Pen. Code, § 1195; e.g., *People v. Allied Fidelity Ins. Co.* (1978) 82 Cal.App.3d 242 [147 Cal.Rptr. 245]).

The bail is also exonerated when the surety, fearful that a defendant will not appear as required, surrenders the defendant to the court, or when the defendant surrenders himself or herself to the court. (Pen. Code, § 1300, subd. (a) ["At any time before the forfeiture of their undertaking, . . . the bail or the depositor may surrender the defendant in their exoneration, or he may surrender himself, to the officer to whose custody he was committed at the time of giving bail . . ."].)

The same result occurs when the court recommits the defendant despite the admission to bail. For example, in *People v. McReynolds* (1894) 102 Cal. 308 [36 P. 590] (*McReynolds*) the defendant appeared, was arraigned and pleaded not guilty. (*Id.* at p. 311.) On motion of the district attorney, "the court . . . made an order that [the defendant] '. . . is hereby committed to the custody of the sheriff . . . , pending the trial of the above-entitled matter'; and under said order the . . . sheriff took [the defendant] into his custody." Afterwards, on motion of the district attorney, the trial court vacated its prior order. Pursuant to the vacating order, the sheriff then released the defendant. (*Ibid.*) "The

trial . . . was continued until the next day, at which time [the defendant] was *not* present; . . . the court made an order forfeiting the bond." (*Ibid.*) In subsequent trial court proceedings, the sureties were unsuccessful in their action to recover the amount of the bond. (*Ibid.*)

The Supreme Court reversed the trial court's ruling. *McReynolds* held that the sureties' liabilities ceased when the defendant was taken into custody of the sheriff by order of the court. (*McReynolds, supra,* 102 Cal. at p. 311.) The Supreme Court reasoned, "Upon the release of a person on bail he is in the custody of the sureties; and the consideration of the bond, accruing to the sureties, is his freedom from any other custody. The responsibility of the sureties is based upon their custody of the person bailed, and their rights and powers under such custody. If they are at any time fearful that he may not appear, they can have him arrested and surrendered; or he may surrender himself; and, in either event, they are exonerated. (Pen. Code, sec. 1300.) When the court orders him into the custody of the sheriff, and the latter takes him, the same result follows. Vacating the order did not by operation of law restore him to [the sureties'] custody. The fact that in the case at bar the sheriff had [the defendant] in his custody under the order, for only a short time, is immaterial. It makes no difference whether the time was ten minutes or ten months. The theory upon which the case seems to have been decided, that [the sureties] should have shown affirmatively that the custody of the sheriff actually prevented them from afterwards producing [the defendant], is not sound. When he was taken into the sheriff's custody [the sureties] were released from any further care as to his whereabouts." (*Id.* at pp. 311–312.) *McReynolds* "reasoned that since a surety may, at any time it is fearful that a defendant may not appear, surrender him and be exonerated (Pen. Code, § 1300), exoneration must also result when the court itself places the defendant in the custody of the sheriff." (*People v. Wilshire Ins. Co.* (1976) 61 Cal.App.3d 51, 58 [132 Cal.Rptr. 19].)

However, in similar circumstances, if statements of the trial court are not intended to submit a defendant to the custody of the sheriff, but rather are mere directives or colloquy, then the defendant has not been placed into "custody" for purposes of bail exoneration. (Cf. *People v. Scott* (1960) 184 Cal.App.2d 792 [7 Cal.Rptr. 755] [no formality is required but there must be some submission to custody or control to exonerate bail].)

Lexington argues that when the trial court directed Duenas "not to leave the courtroom," Duenas was taken into custody and the bail was exonerated, as in *McReynolds*. However, the facts before us differ from *McReynolds* in significant ways. Here, the trial court never issued a formal directive indicating that Duenas was being transferred to the custody of the sheriff. Rather, when Duenas appeared for purposes of arraignment, the court first had to

address the People's motion to have Duenas remanded into custody. The court informed Duenas, "[the People] are seeking to have you remanded into custody today. So would you like to have an attorney represent you for today so that that issue can be addressed?" The trial court directed Duenas to stay in the courtroom so that the issue of custody could be addressed. It would be incongruous to conclude that Duenas was in custody when that was the very issue to be determined and when the trial court never made any express statements or gestures to that effect. Further, the sheriff never restrained Duenas, even for a moment. Thus, the trial court's order to Duenas not to leave the courtroom was not an order to the sheriff to take Duenas into "custody" for purposes of bail exoneration, but rather a directive given prior to the issue of Duenas's remand into custody being addressed.

Lexington points to another situation in which "custody" has been discussed in criminal law.[3] Lexington notes that courts use this term to determine if an extrajudicial statement is admissible for purposes of *Miranda*.[4] In the context of *Miranda,* a suspect is in "custody" if he or she is "physically deprived of his [or her] freedom of action in any significant way" or is led to believe, as a reasonable person, that he or she is so deprived. (*Miranda v. Arizona, supra,* 384 U.S. at p. 444; *People v. Mayfield* (1997) 14 Cal.4th 668, 732 [60 Cal.Rptr.2d 1, 928 P.2d 485].) For purposes of *Miranda,* "the term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. [Citation.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 180 [121 Cal.Rptr.2d 106, 47 P.3d 988].)[5]

---

[3] We observe that the term "custody" can also be found in other areas of criminal law, e.g., in determining whether a defendant has served a prior prison term for purposes of enhancing a sentence (Pen. Code, § 667.5), in the context of habeas corpus (*In re Shapiro* (1975) 14 Cal.3d 711, 715, fn. 3 [122 Cal.Rptr. 768, 537 P.2d 888] ["The detainer also acts as a limited type of 'custody' to which habeas corpus may be directed."], and in deciding when a defendant is entitled to custody credits (Pen. Code, § 2900.5; *People v. Richter* (2005) 128 Cal.App.4th 575, 579–580 [27 Cal.Rptr.3d 198]). The term is also discussed in other areas of the law, e.g., "custody" for purposes of family law. (See Fam. Code, § 3000 et seq.)

[4] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

[5] Lexington also points to *People v. Handley* (1970) 11 Cal.App.3d 277 [89 Cal.Rptr. 656] (*Handley*). In *Handley,* the defendant pleaded guilty to two misdemeanors. The trial court denied probation, sentenced the defendant to 30 days in the county jail, and then stated, " 'You are in custody. Sit down over there[, indicating the area in the courtroom customarily reserved for prisoners in custody].' " (*Id.* at p. 279.) The defendant then bolted from the courtroom, only to return five to 10 minutes later. The issue in *Handley* was whether the defendant was guilty of escape within the meaning of Penal Code section 4532. *Handley* concluded that the defendant had committed the crime of escape because his dash out of the courtroom followed sentencing and the trial court's words, " 'You are in custody. Sit down over there,' " left no doubt that the defendant knew he was being taken into the custody of the sheriff-bailiff and

■ It is apparent that in both situations (exoneration of bail when the trial court recommits a defendant and *Miranda* rulings), the concept of restricting a person's freedom is involved. However, for our purposes, it is sufficient to say that to determine whether a trial court has recommitted a defendant such that bail is exonerated, the trial court must indicate in some clear or formal way that custody of the defendant is being transferred to the control of the sheriff. Unequivocal pronouncements may be sufficient, however, other circumstances may also be considered.

This is demonstrated by *McReynolds* where the trial court articulated precisely what it intended by stating that the defendant " 'is hereby committed to the custody of the sheriff . . . pending the trial' " and additionally, the sheriff physically took the defendant into custody. (*McReynolds, supra,* 102 Cal. at p. 311.) In *McReynolds,* the trial court made explicit statements of its intent to take the defendant into custody in circumstances in which that result was expected to occur. It was clear that the defendant in *McReynolds* was being surrendered to the custody of the sheriff. (Cf. Pen. Code, § 1300, subd. (a)(1) [permitting the surety to surrender the defendant into custody].)

■ We recognize that because " 'equity abhors a forfeiture,' . . . 'statutes imposing them are to be strictly construed . . .' [and that t]his rule applies to the forfeiture of surety bonds. [Citation.]" (*People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 795 [113 Cal.Rptr.2d 448].) However, we must also give a commonsense interpretation to events.

■ Here, the trial court directed Duenas to stay in the courtroom so that the trial court could determine *if* he should be remanded into custody. There was no express statement by the trial court that Duenas was being taken into custody. Thus, even though Duenas disobeyed a court order and might have been guilty of contempt, at the time he fled the courtroom he was not "in custody" for purposes of exonerating his bail. The trial court properly ordered the bail forfeited and properly denied the motion to set aside the summary judgment.

---

deprived of his liberty by a judicial officer. (*Handley,* at p. 282.) However, *Handley, supra,* 11 Cal.App.3d 277, has been overruled in *People v. Diaz* (1978) 22 Cal.3d 712, 716–717 [150 Cal.Rptr. 471, 586 P.2d 952] (*Diaz*) and thus cannot be relied upon.

*Diaz, supra,* 22 Cal.3d at pages 716–717 held that the term "prisoner" connotes "a person who has been booked, incarcerated at the time of his escape, or previously so incarcerated and temporarily in custody outside the confinement facility. . . ." (*Id.* at p. 716.) *Diaz* rejected *Handley*'s reasoning "that the term 'prisoner' could be interpreted as one who was deprived of his liberty by virtue of a judicial or other process." (*Ibid.*) And, *Diaz* rejected *Handley*'s conclusion that "[b]ecause the defendant . . . had been advised, following sentencing, that he was 'in custody' and had been ordered to sit in an area of the courtroom reserved for persons in custody, . . . that [the] defendant was a 'prisoner' within the meaning of section 4532." (*Ibid.*; see 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 93, pp. 1186–1188.)

## DISPOSITION

The order is affirmed. Lexington is to pay all costs on appeal.

Klein, P. J., and Kitching, J., concurred.