[No. B200551. Second Dist., Div. Eight. Nov. 4, 2008.]

INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY et al., Plaintiffs and Appellants, v.
ANAND JON ALEXANDER, Defendant and Respondent.

**COUNSEL**

Nunez & Bernstein and E. Alan Nunez for Plaintiffs and Appellants.

Marks & Brooklier, Donald B. Marks and Elizabeth M. Roos for Defendant and Respondent.

## OPINION

**RUBIN, J.**—Indiana Lumbermens Mutual Insurance Company and Montana Bail Bonds appeal from the trial court's order compelling them to refund the premium they received to post a bail bond for Anand Jon Alexander. We reverse the court's order.

## FACTS AND PROCEEDINGS

Respondent Anand Jon Alexander was arrested in March 2007 and charged with four counts of rape, lewd acts against a child, and contributing to the delinquency of a minor. On April 3, 2007, appellants Indiana Lumbermens Mutual Insurance Company and Montana Bail Bonds (collectively Indiana Lumbermens) posted a bail bond in the amount of $1,365,000 to secure Alexander's release from custody. Alexander's family paid $139,210 for the bond. The bail agreement stated appellants "fully earned" the $139,210 premium upon Alexander's release from jail. Additionally, the family members who paid the premium signed a document attesting they "understand that the premium owing and/or paid on this bond is fully earned upon release of the defendant from custody."

While Alexander was free on bail, the People filed 40 new counts against him, involving rape, forcible oral copulation, sexual battery, and lewd acts against minors. In addition, the trial court received from Texas a warrant for Alexander's arrest. The court denied the People's motion to raise Alexander's bail based on the 40 new charges. The court did, however, remand Alexander into custody for the Texas warrant. The day after Alexander's return to custody, Indiana Lumbermens instructed its general agent in California to surrender the bail bond it had posted on Alexander's behalf, and within two days the agent did so. The court thereafter exonerated the bond. (*People v. McReynolds* (1894) 102 Cal. 308, 311–312 [36 P. 590] [defendant's return to custody exonerates bond]; *People v. Lexington National Ins. Co.* (2007) 147 Cal.App.4th 1192, 1198–1199 [54 Cal.Rptr.3d 900].)

Following his remand into custody, Alexander moved for a court order compelling appellants to refund the premium his family had paid for his bail bond. The court set a hearing to show cause why it should not grant Alexander's motion. In setting the hearing, the court told Alexander, "I've done this before, and based on your motion, I would intend to order a full and complete refund of any premium if it has not been reinstated, so I would advise you that's what I would do."

At the hearing to show cause, appellants argued the court should not order a refund of the premium because they earned it upon Alexander's release

from custody. They noted Alexander had been returned to jail at the court's initiative, not theirs, following the court's receipt of the Texas arrest warrant; only after the court had remanded Alexander into custody did they surrender the bail bond which had secured his freedom during the previous two months. The court rejected appellants' argument and ordered them to refund the entire premium. This appeal followed.

## DISCUSSION

■ The bail bond here was a contract under which appellants guaranteed to the trial court that Alexander would appear for his court dates. (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 22 [36 Cal.Rptr.2d 807].) Because appellants were at risk for paying the entire posted bail if Alexander absconded at any time, the law permitted appellants to make the premium nonrefundable. (*Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939 [35 Cal.Rptr.3d 178] (*Kiperman*).) Exercising their prerogative, appellants' bail agreement with Alexander stated appellants earned their premium immediately upon his release from custody.

Although a bail bond may secure a defendant's freedom, a bonding company has the statutory right to surrender its bond at any time to return a defendant to the court's custody. (Pen. Code, § 1300, subd. (a).) Whenever a bonding company exercises that right without good cause, however, Penal Code section 1300, subdivision (b) (section 1300(b)) permits the court to order the bonding company to refund the defendant's premium. Section 1300(b) states: "[I]f the court determines that good cause does not exist for the surrender of a defendant who has not failed to appear or has not violated any order of the court, it may, in its discretion, order the bail or the depositor to return to the defendant or other person who has paid the premium or any part of it, all of the money so paid or any part of it." Section 1300(b)'s purpose is to temper the bonding company's virtually unlimited power over the defendant's freedom. (*Kiperman, supra,* 133 Cal.App.4th at p. 939.) By constraining the bonding company, the statute prevents the inequity of a bonding company's pocketing a defendant's premium, only to turn around and hand the defendant back to the authorities. (See *People v. Smith* (1986) 182 Cal.App.3d 1212, 1217 [228 Cal.Rptr. 277].)

■ Alexander asserts the court found appellants lacked good cause to surrender his bond. Thus, Alexander concludes, the court properly exercised its discretion under section 1300(b) to order a refund of his bond premium. Appellants contend, on the other hand, that the court abused its discretion in relying on section 1300(b) because appellants did not surrender Alexander into custody since he was already in custody on the Texas warrant when they surrendered the bond.

■ *Kiperman, supra,* 133 Cal.App.4th 934, shows appellants are correct. In *Kiperman,* the trial court remanded into custody a defendant previously free on bail when the court increased the defendant's bail after the People filed new charges against him. (*Id.* at p. 936.) Following the defendant's return to custody, the trial court ordered the bonding company to refund the premium the defendant had paid for his bail bond. (*Id.* at pp. 936, 939.) On review, the appellate court found the trial court lacked authority to order a refund because the trial court, not the bonding company, had returned the defendant to custody. *Kiperman* explained: "[The bonding company] did not actually surrender the defendant . . . . Rather, it was the trial court that caused the defendant to return to custody due to the new stalking charge and the consequent increase in bail . . . . It was no fault of the [bonding company] that the defendant was back in custody . . . . The authority in section 1300 for the court to consider return of the premium applies only where the [bonding company] has surrendered the defendant to custody without adequate good cause." (*Kiperman,* at p. 940.) Because section 1300(b) did not apply, the *Kiperman* trial court abused its discretion in ordering a refund of the bond premium. *Kiperman* stated: "Where, as here, there was no surrender by the [bonding company] since the defendant was returned to custody by the court's action in raising the bail and remanding the defendant, the court had no statutory authority to exercise any discretion regarding the premium. Accordingly, the trial court abused its discretion by . . . ordering return of the premium paid by the defendant on that bond." (*Kiperman,* at p. 940.)

The *Kiperman* defendant eventually resecured his release by posting a second bond. (*Kiperman,* 133 Cal.App.4th at pp. 936, 940.) The bonding company later surrendered the defendant and the second bond when it learned of the defendant's plans to flee California. (*Id.* at pp. 937, 940.) Seizing on that twist in the case, Alexander attempts to distinguish *Kiperman* because no evidence exists here that Alexander was preparing to flee. Alexander's distinction fails, however, because it ignores the *Kiperman* court's conclusion that the trial court erred in ordering a refund of the first bond premium after the trial court remanded the *Kiperman* defendant into custody. Alexander's similarity to the defendant in *Kiperman* rests on each of them having been returned to custody at the initiative of their respective trial courts; the bonding company's later surrender of the defendant in *Kiperman*—whether for good cause or not—has no bearing here because appellants did not surrender Alexander.[1]

---

[1] Alexander's respondent's brief asks that we remand this matter to the trial court for an evidentiary hearing on the bail bond's validity if we reverse the trial court's order refunding his premium. He appears to reason that an alternative ground for ordering a refund is the bond's purported voidness. Alexander has not, however, supported his request with a cogent argument supported by citations to the record and legal authority. We therefore pass on his request without further consideration and without deciding whether the trial court may decide the point

## DISPOSITION

The court is directed to reverse and vacate its order compelling Indiana Lumbermens Mutual Insurance Company and Montana Bail Bonds to refund the premium they received for posting a bail bond on behalf of Anand Jon Alexander. The court is directed to enter a new and different order denying Anand Jon Alexander's motion for a refund. Appellants to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied December 1, 2008, and respondent's petition for review by the Supreme Court was denied February 18, 2009, S169043. George, C. J., did not participate therein.

at this juncture. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)