Filed 11/14/13 County of Santa Barbara v. American Surety CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COUNTY OF SANTA BARBARA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMERICAN SURETY COMPANY,<br><br>    Defendant and Appellant. | 2d Civil No. B238601<br>(Super. Ct. No. 1363847)<br>(Santa Barbara County) |

American Surety Company (American) appeals from an order denying its motion to vacate a $1 million bail forfeiture and exonerate two $500,000 bail bonds that were posted on behalf of Randall Rudy Quaid and Evegenia Helena Quaid (Randy and Evi, respectively) after they fled to Canada. (Pen. Code, § 1305.)[1] American claims that the bail bonds are void *ab initio* because the Quaids were not released from "custody" in exchange for the posted bond amount.

We reverse and remand with directions to enter a new order to vacate Randy's bail forfeiture and exonerate his $500,000 bail bond. Bail was forfeited nunc pro tunc in violation of section 1305, subdivision (a). The order denying

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

American's motion to vacate Evi's bail forfeiture and exonerate her $500,000 bail bond is affirmed.

*FACTS*

On September 18, 2010, the Quaids were arrested for felony vandalism (§ 594, subd. (b)(1)) after they allegedly entered a private residence and destroyed property in excess of $5,000 in value.  American's agent, Biker Bail Bonds, posted $50,000 bail each for the Quaids' release on September 19, 2010.

*Failure to Appear:  Bench Warrant*

When the Quaids failed to appear at the October 18, 2010 arraignment, the trial court issued $50,000 bench warrants.  (§ 979.)  Quaids' attorney, Robert Sanger, requested a continuance.  Granting that request, the trial court continued the arraignment to October 26, 2010.  Although the minute order states that the September 19, 2010 bail was "forfeited," the court did not declare the forfeiture in open court (§1305, subd. (a)).[2]

Several days later, it was learned that the Quaids were in Canada and detained by Canadian immigration officials.  On October 22, 2010, based on their nonappearance and flight risk, the trial court granted the prosecution's motion to increase their bail to $500,000 each.

*$500,000 Bail Bonds*

On October 26, 2010, attorney Sanger appeared and stated that he had spoken to the Quaids.  At counsel's request, the trial court continued the arraignment to November 2, 2010, and ordered the $50,000 bench warrants to remain outstanding.  After the hearing, American's agent, Santa Barbara Bail Bonds, posted a $500,000 bail bond on each bench warrant.

On November 2, 2010, the Quaids failed to appear.  The trial court ordered Evi's $500,000 bail forfeited.  It recalled Randy's bench warrant and

[2] On June 20, 2011, the trial court granted American's motion to vacate the forfeiture and exonerate the $50,000 bail bonds because the forfeiture was not declared in open court as required by section 1305, subdivision (a)(1).

2

ordered it held to November 16, 2010. (§ 1305.1.) On November 5, 2010, the trial court reconsidered its ruling, found there was no good cause for Randy's nonappearance, and ordered Randy's bail forfeited nunc pro tunc as of November 2, 2010.

On June 20, 2011, the trial court granted American's motion to extend the time to return the Quaids to custody (§ 1305.4) based on the prosecution's representation that it was seeking their extradition. After the United States Department of Justice declined to process the extradition request, the trial court denied American's motion to vacate the bail forfeiture and to exonerate the $500,000 bail bonds.

*DISCUSSION*

Because the facts are not in dispute and the issue involves contract and statutory interpretation, our review of the trial court's order is de novo. (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 558, 592.) American argues that the $500,000 bail bonds were void at their inception because the Quaids were not in custody when the bonds were posted.

A bail bond is a contract between the government and the surety in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. (*People v. Amwest Surety Ins. Co.* (2001) 87 Cal.App.4th 69, 71.) "'. . . "In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and *at a specified time and place* . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond." [Citation.]' [Citation.]" (*Ibid*.)

American claims that Quaids' fugitive status rendered the October 22, 2010 $500,000 bail order void *ab initio* because the Quaids were not in "custody." If that was the law, every bail bond posted on a failure to appear bench warrant would be void. It would repeal section 979 which provides: "If the defendant has been discharged on bail . . . , and does not appear to be arraigned when his personal

3

presence is necessary, the court, in addition to the forfeiture of the undertaking of bail . . . , may order the issue of a bench warrant for his arrest." Here the Quaids did not appear at the October 18, 2010 arraignment and $50,000 bench warrants issued pursuant to section 979.

Bail was increased to $500,000 on October 22, 2010 after the trial court learned that the Quaids fled to Canada. American complains that the Quaids were not in the court's custody when their bond amounts were set and posted.

The Quaids, however, were already out on bail and in American's custody. "'When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment.' [Citations.]" (*People v. Lexington Nat. Ins. Co.* (2007) 147 Cal.App.4th 1192, 1198.) The two $50,000 bail bonds which were posted to get the Quaids out of jail were not declared forfeited "in open court." (§ 1305, subd. (a)(1); *Lexington*, at fn. 2.) The court increased their bail pursuant to section 985 which provides: "When the information or indictment is for a felony, and the defendant, before the filing thereof, has given bail for his appearance to answer the charge, the Court to which the indictment or information is presented, or in which it is pending, may order the defendant to be committed to actual custody, unless he gives bail in an increased amount, to be specified in the order." Section 986 provides that if the defendant is not present when the order is made, "a bench-warrant must be issued. . . ."

American acknowledges that the trial court had authority to increase bail but argues that the court could not "admit" the Quaids to bail until the court had custody of the Quaids. Admission to bail is defined as "the order of a competent Court or magistrate that the defendant be discharged from actual custody upon bail." (§ 1268.) But that occurred on September 19, 2010, when American's agent, Biker Bail Bonds, posted bail for the Quaids' release.

American bases its appeal on the false premise that it has no surety obligation on the $500,000 bonds unless the Quaids were released from custody when bail was posted on October 22, 2010. Such a construction of the law renders

4

sections 985 and 986 null.  It is contrary to American's prior claim that the $500,000 bail bonds relieved it of liability on the first bonds.  That was the ground for American's June 21, 2011 motion to exonerate the $50,000 bail bonds which were posted to get the Quaids out of jail.[3]

American assumed custody of the Quaids on September 19, 2010, when they were released from jail.  (See *People v. McReynolds* (1894) 102 Cal. 308, 311-312 ["responsibility of the sureties is based upon their custody of the person bailed"]; *People v. Amwest Surety Ins. Co.* (1986) 180 Cal.App.3d 444, 447-448 [liability or surety ceases when defendant is remanded to custody of sheriff]; *People v. United Bonding Ins. Co.* (1969) 274 Cal.App.2d 898, 902-904 [court released defendant on day after it ordered bail forfeited without placing defendant in custody; bond surety remained liable for defendant's nonappearance].) The fact that the Quaids fled the state or were arrested in other proceedings (i.e., the Canadian immigration proceeding) does not exonerate the bond obligation.  (*County of Los Angeles v. Maga* (1929) 97 Cal.App. 688, 691.)  "[W]hen the People attempt to obtain extradition as they did in this case, they have done all they can to bring the defendant before the court and it is not unjust for the surety which has assumed the

_____

[3] American's motion to exonerate the $50,000 bail bonds stated: "[T]he original bond[s] were released by novation.  [¶]. . .[¶]  It is intuitive that a defendant cannot have two active bonds at the same time.  To hold otherwise, would require the original surety to locate and surrender the defendant on his original bond, while at the same time charging the second surety with the custody and control of the defendant.  This principle stands true even if the same surety posts both bonds."

American claimed that "'[n]ovation is the substitution of a new obligation for an existing one.'"  (Citing Civ. Code, § 1530)  Surety law, however, bars American from having its cake and eating it too.  Code of Civil Procedure section 996.240 provides:  "If a new bond is given in place of the original bond: [¶]  (a) The original bond remains in full force and effect for all liabilities incurred before, and for acts, omissions, or causes existing or which arose before, the new bond became effective."  Assuming, arguendo, that the $500,000 bail bond was an additional or supplemental bond, it "does not discharge or affect the original bond. The original bond remains in full force and effect as if the additional or supplemental bond had not been given."  (Code Civ. Proc., § 996.250, subd. (a).)

5

risk of the defendant's nonappearance to bear the consequences." (*People v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 812, 819.)

*Nunc Pro Tunc Forfeiture of Randy's Bail*

American argues that the nunc pro tunc forfeiture of Randy's $500,000 bail bond on November 5 was void. We agree. Had the forfeiture been declared on November 2, as it was with Evi's bond, or on November 16 (§ 1305.1), it would have been valid. Randy, however, was not required to be present at the November 5 hearing. Therefore, the trial court could not "as a matter of law validly declare a forfeiture under section 1305 based on [Randy's] nonappearance at a hearing he was not 'lawfully required' to attend . . . .'" (*People v National Auto. & Casualty Ins. Co.* (2004) 121 Cal.App.4th 1441, 1451.) The trial court's effort to correct the matter as of November 2 by a nunc pro tunc order was equally unavailing.

A court cannot revive lapsed jurisdiction by the simple expedient of issuing an order nunc pro tunc. (*In re Daoud* (1976) 16 Cal.3d 879, 882; *People v United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904.) The court is required to declare a forfeiture of bail "in open court" if a defendant fails to appear at a "lawfully required" court proceeding. (§ 1305; 4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Pretrial Proceedings, § 118, pp. 358-359; *People v. Allegheny Cas. Co.* (2007) 41 Cal.4th 704, 706.) The failure to comply with this statutory requirement results in the loss of jurisdiction to later declare a forfeiture. (*People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 550, 554.)

*DISPOSITION*

We reverse and remand with directions to enter a new order to vacate Randy's bail forfeiture and to exonerate his $500,000 bail bond. The order denying American's motion to vacate Evi's bail forfeiture and exonerate her bail bond is affirmed.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(5).)

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____


Law Offices of Brendan Pegg, Brendan Pegg for Defendant and Appellant.

Dennis A. Marshall, County Counsel, Sarah A. McElhinney, Deputy Counsel for Plaintiff and Respondent.