[No. B133445. Second Dist., Div. Three. Apr. 26, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
AMERICAN SURETY INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

Brendan Pegg for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, Louis V. Aguilar and H. Anthony Nicklin, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CROSKEY, Acting P. J.**—American Surety Insurance Co. (American) appeals from an order that denied its motion to vacate a summary judgment entered on a forfeiture of a bail bond which American provided for criminal defendant Jose Garcia Magana (Magana). The bail was forfeited when Magana failed to appear for sentencing after the trial court had previously indicated to Magana that he would be sentenced to the midterm in exchange for his plea of no contest.

American contends that giving a defendant an indicated sentence is substantially no different from actually sentencing the defendant, and therefore under Penal Code section 1195, Magana's bail should have been exonerated

after the trial court indicated Magana's sentence.[1] American further contends that failure to exonerate the bail materially increased the risk that it assumed on Magana's bail bond since its contractual risk was only to undertake Magana's appearances in court up through sentencing or grant of probation.

We do not agree with American's position. We hold that when, as happened in this case, the trial court indicates a sentence and then instructs the defendant that a failure to make a timely appearance on the date set for imposition of sentence may result in the imposition of a greater sentence, the indication of the sentence does not amount to actual sentencing and therefore the bail is not exonerated under Penal Code section 1195.

### Background of the Case

Magana was charged with various crimes concerning controlled substances. The record shows that on December 1, 1997, American issued a bail bond for him in the amount of $70,000. On June 10, 1998, Magana pleaded no contest to one of the counts in return for a midterm sentence of three years in state prison. The court found there was a factual basis for the plea, found Magana guilty, and convicted him on that day. A probation and sentencing hearing was scheduled for August 19, 1998, Magana was ordered to appear for the hearing, and bail was ordered to stand. The lengthy period of time between the June 10, 1998 hearing and the sentencing hearing was an accommodation by the court to Magana at his attorney's representation that Magana had a large family, worked at a construction job and wanted "to work as long as possible before surrendering on this case."

Magana's plea agreement contained a provision known as a "*Cruz* waiver."[2] Under that provision, if Magana was late for his sentencing hearing or failed to appear for his sentencing hearing, the court could treat Magana's plea as an "open plea," and sentence him to the high term.

Magana failed to appear for sentencing on August 19, 1998, without sufficient excuse, and on August 26, 1998, the clerk of the court served notice on American, and on its bondsman, that its bond was forfeited. On

---

[1]Penal Code section 1195 states in part that "[i]f the defendant, who is on bail, does appear for judgment and judgment is pronounced upon him or probation is granted to him, then the bail shall be exonerated."

[2]The term "*Cruz* waiver" refers to a waiver of the rule announced by the court in *People v. Cruz* (1988) 44 Cal.3d 1247 [246 Cal.Rptr. 1, 752 P.2d 439]. Under *Cruz,* if a defendant, who has pled guilty under a plea bargain, fails to appear at sentencing the court may not then reject the plea bargain and impose a higher sentence without first giving the defendant the opportunity to withdraw his or her plea unless the defendant had previously made a knowing and intelligent waiver. (*Id.* at p. 1253.)

February 23, 1999, a motion by American to extend its statutory time (Pen. Code, § 1305) for producing Magana in court was heard and denied, and on March 10, 1999, the clerk sent a letter to American demanding that American honor its obligation to pay on the forfeited bond.

When the clerk did not receive payment from American on the bond, it requested that a summary judgment on the bail forfeiture be entered by the court. Summary judgment was signed and filed on May 6, 1999. Notice of entry of judgment was served on American on the following day.

On June 1, 1999, American filed a motion to vacate the summary judgment. The motion was heard and denied on June 24, 1999. Thereafter, American filed this timely appeal from the order of denial.

### CONTENTIONS ON APPEAL

American contends that just as a criminal defendant is less likely to make court appearances after he is sentenced than he was before sentencing, so also a defendant is less likely to return to court for sentencing if the court has already indicated the sentence. American further contends that giving a defendant an indicated sentence is thus the functional equivalent of actually sentencing him, and therefore since courts are required by Penal Code section 1195 (see fn. 1, *ante*) to exonerate a defendant's bail when they sentence the defendant, defendant Magana's bail should have been exonerated when the court indicated to Magana what its sentence would be in exchange for Magana's plea of no contest. Thus, American's argument goes, the *effect* of giving Magana an indicated sentence without exonerating the bail at the same time was to greatly increase the risk that American took when it posted bail for Magana, and to materially alter, to American's disadvantage, the terms of the bail bond contract, since the risk undertaken by American when it posted bond for Magana was that Magana would keep his appearances through sentencing or grant of probation. American asserts that under Penal Code section 1195, it was relieved of its obligations under its bond when the trial court gave Magana its indicated sentence and then permitted Magana to return for sentencing, and therefore its motion to vacate the court's summary judgment on the bond should have been granted.

### DISCUSSION

In *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 670-671 [111 Cal.Rptr. 757], the court noted that previously the Penal Code required a surety insurer to undertake that the criminal defendant would appear for *execution* of sentence, but now, under Penal Code section 1459, the surety

undertakes that the defendant will (among other things) "appear for pronouncement of judgment or grant of probation" if convicted. Moreover, Penal Code section 1195 requires a court to exonerate a defendant's bail when the defendant appears for judgment and judgment is pronounced or probation is granted.[3] American's undertaking for Magana was pursuant to section 1459.

As noted above, American contends on appeal that despite the fact that American undertook that Magana would appear for sentencing, it is relieved of that undertaking because the trial court altered the terms of American's bail bond contract and hindered American's performance of the contract when the court indicated to Magana what his sentence would be and then permitted Magana to leave court and return later for pronouncement of judgment. American's position rests on its assertion that a defendant is less likely to appear for sentencing when he knows what his sentence will be.

American cites *People v. Meyers* (1932) 215 Cal. 115 [8 P.2d 837], and *County of Los Angeles v. Ranger Ins. Co.* (1996) 48 Cal.App.4th 992 [56 Cal.Rptr.2d 25] to support its position. In *Meyers*, the court held that sureties on bail bonds should not be saddled with the risk "that the other party to [the] contract may hinder or prevent performance of their obligations." (*Meyers*, at p. 119.) *Meyers* was cited with approval in *Ranger Ins. Co.*, where the court stated that if the government had "acted to prevent [the] surety . . . from fulfilling its contractual duty of having [the criminal] defendant appear in court, then such performance is excused." (*Ranger Ins. Co.*, at p. 996, italics omitted.)

American also relies on *People v. North Beach Bonding Co.*, *supra*, 36 Cal.App.3d 663. In that case, the trial court pronounced sentence on the criminal defendant and then stayed execution of the sentence, permitting the defendant to leave the court and return several days later for execution of the sentence. When the defendant did not return, the court forfeited the bail and denied the bonding company's motion to vacate the forfeiture. The bonding company appealed, and asserted that its duties under the provisions of the bond were complete when the court pronounced judgment and therefore the trial court should have exonerated the bail at that time. The reviewing court agreed, and, as noted above, observed that the law had changed to require that a surety need only undertake to assure the presence of the defendant up through sentencing, not the execution of sentence. The court stated the

---

[3]American appears to argue that when the trial court adjudged Magana guilty and indicated what his sentence would be, it pronounced judgment. We disagree. The court merely told Magana what his sentence would be if he timely appeared on sentencing day. Judgment was never pronounced because Magana did not show up for his sentencing hearing.

change in the law was the result of a recognition that there is a greater risk that a criminal defendant will fail to appear for execution of sentence than fail to appear for pronouncement of sentence. (*Id.* at p. 672.) American contends that for purposes of calculating the risk that Magana would not appear in court again after June 10, 1998, the fact that Magana had been told what sentence he would receive is equivalent to his having had sentence pronounced. Therefore, contends American, its risk under the surety bond was increased, its ability to perform under the bond was hindered, and we should conclude that American's bail was effectively exonerated by the indication of sentence. We disagree.

When Magana struck his deal with the People, he was not just given an indication of what his sentence would be if he timely appeared on August 19, 1998, he was also told that if he did not timely appear on that date, the court would have the option of sentencing him to the high term. Thus, he was given an incentive to make the August 19 appearance and, conversely, a disincentive to fail to appear on that day. This carrot-and-stick approach of the court does not occur when a defendant is actually sentenced. Thus, this case is not factually similar to *People v. North Beach Bonding Co., supra,* 36 Cal.App.3d 663, where the trial court actually sentenced the defendant and permitted him to leave court and return for execution of the sentence. This carrot-and-stick approach also makes this case factually dissimilar to a hypothetical situation addressed by the *North Beach Bonding* court. In dicta, that court stated that a risk of a criminal defendant not appearing for a scheduled hearing may result from "continuing the matter of pronouncement of judgment after indicating what the judgment will be." (*Id.* at p. 672.)

In discussing its hypothetical "indicated sentence" case, the *North Beach Bonding* court stated that "the surety will know that his undertaking to produce the defendant for sentencing is unperformed and if insecure he may surrender the defendant into custody and ask for exoneration of bail. ([Pen. Code,] § 1300.)" (*People v. North Beach Bonding Co., supra,* 36 Cal.App.3d at p. 672.) Here, American contends that (1) it had no notice of the fact that the trial court had given Magana an indicated sentence, and thus it had no opportunity to reassess the risk posed by Magana continuing to be out on bail, and (2) had it known that the court had given the indicated sentence and permitted Magana to remain out of custody, it would have most likely surrendered Magana at that time because of its reassessment of risk created by the indicated sentence. However, American's motion to vacate the summary judgment does not contain evidence which supports this contention. There was no declaration or other evidence presented with the motion showing that American was unaware that the court had permitted Magana to leave and return later for pronouncement of sentencing, and showing that if

American had been aware, it would have surrendered Magana and requested that bail be exonerated. Therefore, assuming arguendo that we would otherwise follow this dicta analysis from *North Beach Bonding Co.*, factually it would not be applied here to relieve American of its duties under its bond.[4]

While it is true that the law disfavors forfeitures, including forfeitures of bail under the bail provisions of the Penal Code, it is the burden of the surety to show that a forfeiture of its bail should be set aside. (*People v. American Surety Ins. Co.* (1999) 75 Cal.App.4th 719, 725 [89 Cal.Rptr.2d 422].) Here, American has not made that showing. We reject its position that the trial court's "indication" of its intended sentence must be treated, for purposes of bond exoneration, in the same manner as a sentence actually imposed. Therefore, the order denying American's motion to vacate the summary judgment on the bail bond will be affirmed.

## DISPOSITION

The order from which American has appealed is affirmed. Costs on appeal to the county.

Kitching, J., and Aldrich, J., concurred.

---

[4]We note, as does American, the 1999 amendment of Penal Code section 1166. Prior to this amendment, section 1166 provided that when a verdict was given against a defendant who was on bail, the court could commit him to "the proper officer of the county to await the judgment of the court upon the verdict." (Stats. 1935, ch. 657, § 5, p. 1814.) Now however, section 1166 provides that when a defendant who is on bail suffers a verdict against himself, he "*shall* be committed to the proper officer of the county to await the judgment of the court upon the verdict" (italics added), and when so committed the bail is exonerated, *unless* the court concludes from the evidence regarding the defendant that the defendant can remain out of custody on bail. The evidence to be considered by the court in determining whether the defendant can remain on bail includes protection of the public and public safety, the seriousness of the offense proven by the People, the defendant's previous criminal record, and the probability that the defendant will fail to appear for sentencing.

On its face, this change in the law appears to represent a belief by the Legislature that being adjudged guilty of a crime decreases the likelihood of some people to voluntarily appear again in court. In this case, of course, Magana was not adjudged guilty; he pleaded no contest. Nevertheless, we make no determination whether this distinction would preclude application of amended Penal Code section 1166 if Magana had pleaded guilty after January 1, 2000, the date the amendment to section 1166 became effective.

# NOTICE TO SUBSCRIBERS

With the publication of this volume, 88 Cal.App.4th, no additional advance sheets should be discarded. All advance sheets through 2001, No. 6 should previously have been discarded.

**BancroftWhitney**

POST OFFICE BOX 7005
SAN FRANCISCO
CALIFORNIA 94120-7005
1 (800) 328-4880