Filed 9/9/20  P. v. The North River Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075780 |
| Plaintiff and Respondent, | |
| v. | |
| THE NORTH RIVER INSURANCE COMPANY, | (Super. Ct. No. 37-2019-00015736-CU-EN-CTL) |
| Defendant and Appellant; | |
| BAD BOYS BAIL BONDS, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, Theodore Weathers and Francis M. Devaney, Judges.  Affirmed.

Jefferson T. Stamp for Defendant and Appellant The North River Insurance, Company and Real Party in Interest and Appellant Bad Boys Bail Bonds.

Thomas E. Montgomery, County Counsel, Jennifer M. Stone, Deputy County Counsel, for Plaintiff and Respondent.

Defendant The North River Insurance Co. and its agent, defendant Bad Boys Bail Bonds (collectively known as Surety), appeal from a summary judgment and the denial of a motion to vacate forfeiture of and exonerate the bail bond that was posted on behalf of criminal defendant Jose Sabas Suarez. Surety contends that by setting a sentencing date for Suarez that was three months after entry of his guilty plea to enable his counsel to obtain medical documentation relevant to sentencing, the court changed the terms of Suarez's custody and release such that it materially increased the risks to Surety, discharging its liability on the bond. We disagree. Suarez remained released on bail in lieu of custody pending his formal sentencing date. Moreover, the setting of reasonable court dates and the granting of reasonable continuances are part of the normal course of criminal proceedings and do not, without more, constitute grounds for discharge of a surety. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2017 defendant Suarez was charged with importation and possession for sale of methamphetamine. Surety posted a $170,000 bond to secure his appearance at future court proceedings, and Suarez was released on bail. Roughly one month later, as part of a plea agreement, Suarez pleaded guilty to one count of violating Health and Safety Code section 11379, subdivision (a). He entered a time waiver, and the court set sentencing for January 9, 2018, nearly two months later than the due course date.

Suarez represented to the court that he had been diagnosed with cancer. Judge Devaney indicated that if Suarez could provide proof of that diagnosis at sentencing, he would impose of a sentence of three years local prison time. If Suarez could not substantiate the diagnosis, the sentence

2

would be five years in local prison. The prosecutor explained that the sentencing date was set "in part so that the medical documentation can be provided." Judge Devaney then advised Suarez: "You've got a long time between now and sentencing. The purpose is to assist [defense counsel] in getting those documents he needs. If you decide to get in trouble between now and January 9, or you don't show up on January 9, you initialed what is called a *Cruz*[1] waiver on this which means this plea bargain is out the window and we go back to square one and you could be very well sentenced to the full seven years."

Suarez failed to appear for sentencing on January 9. Judge Devaney issued a bench warrant and ordered forfeiture of the bail bond. With the initial 180-day period set to expire on July 16, 2018, Surety filed an extension request. The court first granted a 90-day extension on August 13, then granted another 90-day extension on November 9, giving Surety until February 11, 2019 to produce Suarez.[2] On that date, with Suarez still unaccounted for, Surety filed a motion to vacate forfeiture and exonerate the bond.[3] The motion was denied on March 13. Approximately two weeks later, the court entered summary judgment against Surety in the amount of $170,000 plus costs.

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247.

[2] The second 90-day extension would have expired on Saturday, February 9. By operation of law (Code Civ. Proc., § 12a, subd. (a)), it was further extended until Monday, February 11.

[3] In the motion papers, Surety represented that Suarez was residing in Rosarito, Baja California, Mexico.

3

DISCUSSION

A.      *General Principles Applicable to Bond Forfeiture Proceedings*

        " 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citation.]  'While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature.'  [Citation.]  In that regard, the bail bond itself is a ' "contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." '  [Citation.]  When a defendant who posts bail fails to appear at a scheduled hearing, the forfeiture of bail implicates not just the defendant's required presence, but constitutes a 'breach of this contract' between the surety and the government.  [Citation.]  Ultimately, if the defendant's nonappearance is without sufficient excuse, it is the surety who 'must suffer the consequences.' [Citation.]" (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709.)

        Penal Code sections 1305 to 1308 set forth specific statutory procedures governing the forfeiture of bail bonds.[4]  Trial courts are required to strictly comply with these procedures, and noncompliance is treated as a jurisdictional defect.  (*People v. United States Fire Insurance Co.* (2015) 242 Cal.App.4th 991, 998–999.)  As a result, "appellate courts carefully review the record to ensure strict statutory compliance." (*Id.* at p. 999.)  Except where the facts are undisputed and the appeal involves a pure question of law, we review the trial court's order for abuse of discretion.  (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5.)

_____

[4]      All subsequent statutory references are to the Penal Code.

4

Section 1305, subdivision (a) requires the trial court to declare a forfeiture of bail if a criminal defendant fails to appear for specified court proceedings without a satisfactory explanation.  If the bond amount was greater than $400, the court clerk must mail notice of forfeiture to the surety, which then gives the surety 185 days to bring the defendant to court. (§ 1305, subds. (b)–(c); *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658.)  On a showing of good cause, the court may grant the surety an extension of up to 180 additional days.  (§ 1305.4.)  If the defendant is brought to court during that period, the forfeiture must be vacated and the bond exonerated.  (§ 1305, subd. (c)(1); *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 253.)  But if the surety fails to produce the defendant, the court has 90 days within which to enter summary judgment against the surety.  (§ 1306, subds. (a) and (c); *People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044.)  Summary judgment in this context is a consent judgment entered pursuant to the surety's agreement included in the bond.  (*County of Los Angeles v. Amwest Surety Ins. Co.* (1983) 147 Cal.App.3d 961, 967; see § 1287, subd. (a) [undertaking must include consent to entry of summary judgment upon forfeiture].)

B.    *Setting Suarez's Sentencing Date Beyond the Due Course Date Did Not Prevent Surety from Surrendering Him If It Chose to Do So.*

Subdivision (a) of section 1300 provides that "[a]t any time before the forfeiture of their undertaking, . . . the bail . . . may surrender the defendant" and thereby exonerate the bond.  As the court explained in *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, this statute "permits the bonding company to surrender a defendant into custody and terminate liability *at any time before forfeiture*."  (*Id.* at p. 939.)  Surety claims that by setting Suarez's sentencing date nearly three months after his plea was taken—and almost two months after the due course no-time-waiver date—the trial court

5

deprived Surety of constructive custody and prevented surrender of the defendant pursuant to section 1300. Accordingly, it argues, the bond must be exonerated and the forfeiture vacated.

Suarez was entitled to a separate sentencing hearing, and the court undoubtedly weighed a variety of factors in selecting the date. Setting the defendant's sentencing date either one month after his plea—as would have been the due course date—or nearly three months following the plea did not change Suarez's status as being constructively in the custody of his surety. In either instance, Surety retained its statutory right to surrender Suarez to custody and obtain exoneration of the bond. Of course, had it done so without any fault on Suarez's part, it would have been required to refund the bond premium. (§ 1300, subd. (b).) Surety makes no showing that it was somehow precluded from surrendering Suarez had it chosen to do so.

Surety incorrectly characterizes the order setting a sentencing hearing as "effectively stay[ing] the imprisonment of the criminal defendant." There was no stay, effective or otherwise. (Compare *People v. American Surety Ins. Co.* (2001) 88 Cal.App.4th 762, 767 [court announced an indicated or anticipated sentence] with *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 675 [court actually sentenced the defendant but stayed execution of sentence].) Contrary to Surety's argument, there was no "central provision of the plea agreement" guaranteeing Suarez three months of freedom before sentencing. Judge Devaney expressly stated that the time before the January 9 sentencing was for Suarez's *counsel* to obtain the necessary medical documentation. In no way did the court's order at the change of plea hearing alter Suarez's custody status. The order clearly indicates that Suarez remained released "on bail" pending sentencing.

6

C.   *Setting Suarez's Sentencing Date Beyond the Due Course Date Did Not Materially Increase Surety's Risk So As to Discharge Its Liability.*

Surety asserts that it "is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risks." (*People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322.)  This is but an application of the broader principle that the government will not do anything to interfere with the terms of the contract that governs the relationship between the surety and the defendant.  (*Ibid.*)  Here Surety claims the trial court's setting of Suarez's sentencing hearing nearly three months after the entry of his guilty plea materially increased the risk of his nonappearance by allowing him "to get a head start in absconding to Mexico."

The crucial point here is that government action will discharge a surety only where it *materially* increases the risk of the defendant's nonappearance. Future court dates are set for a variety of reasons and time waivers by defendants are common.  (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1044 ["time limits on the pronouncement of sentence provided by section 1191 are not jurisdictional, but may be waived by the parties"].)  Indeed, but for the willingness of counsel and most defendants to be flexible with regard to dates, the processing of criminal cases would quickly grind to a halt.  Regular participants in the criminal justice system—including sureties—understand that reasonable flexibility is part of the process.  Moreover, as the deputy district attorney commented here, the need for time to allow defense counsel to obtain medical documentation was only "part" of the reason for selecting the January 9 sentencing date.  Given the approaching holiday period, more flexibility in setting hearing dates could be expected.

Setting Suarez's sentencing date for January 9 did not materially increase the risk that he would fail to appear. Presumably Suarez knew at the time of his plea whether medical documentation to support his claim could be obtained. If the potential of two additional years of local prison was the motivation for fleeing California, he could have left as easily in October or early November as in December or early January. Indeed, Surety makes no showing as to when Suarez actually absconded, nor does it offer any reason to believe that it was the *extra* time—between November 16 and January 9—that permitted Suarez to escape.

Surety relies on *United States v. Aguilar* (N.D.Cal. 1993) 813 F.Supp. 727, but the facts of that case are readily distinguishable. In *Aguilar*, the sureties posted bail conditioned on the defendant not traveling outside the Northern District of California. Unknown to the sureties, the government entered into a plea deal that contemplated the defendant's cooperation in a Southern California criminal investigation and the court approved travel outside the District. When the defendant later failed to appear for sentencing, the sureties moved to discharge their liability on the bond and the district court agreed. (*Id.* at p. 728.)

*Aguilar* involved an express condition on the sureties' obligation that was violated by the government. Here, in contrast, there was no express condition. Surety did not agree to post bail conditioned on Suarez being sentenced within a set number of days of the entry of his guilty plea. In the absence of such an express condition, it can be assumed that sentencing will be within a reasonable period of time, and there is no showing here that the trial court abused its discretion in concluding the January 9 date was reasonable.

DISPOSITION

The summary judgment against Surety and the corresponding denial of its motion to vacate forfeiture of the bond are affirmed.  Respondent is entitled to its costs on appeal.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.