Filed 11/22/24  P. v. The North River Ins. Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>THE NORTH RIVER INS. CO. et al.<br><br>  Defendants and Appellants. | H051424<br>(Santa Clara County<br> Super. Ct. No. C1904464) |

The North River Insurance Company and Bad Boys Bail Bonds (collectively North River) appeal from the trial court's order denying their motion to vacate forfeiture of a bail bond and the summary judgment subsequently entered against them.  North River argues that the trial court did not have jurisdiction to declare a forfeiture at a June 3, 2019[1] hearing because it had already pronounced sentence on the on-bail defendant, Jose Miguel Mejia, at a prior hearing.  The County of Santa Clara contests the merits of North River's arguments, but also contends that the appeal is procedurally barred given that North River abandoned its prior appeal and unreasonably delayed in raising its claim that the trial court lacked jurisdiction to forfeit the bond.

As detailed below, we conclude that North River's appeal is not barred as it is premised on the argument that the trial court lacked fundamental jurisdiction to forfeit the bond and the ensuing judgment was therefore void on its face.  However, we further

_____

[1] All dates are from 2019 unless otherwise specified.

conclude that the trial court did not pronounce sentence at the April 3 hearing and thus retained jurisdiction to declare a forfeiture when Mejia subsequently failed to appear at the June 3 hearing. We will therefore affirm the order and judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 8, the Santa Clara County District Attorney filed a complaint charging Mejia with felony possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 1),[2] felony possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378; count 2), and felony possession of ammunition by a felon (§ 30305, subd. (a)(1); count 3). The complaint further alleged that Mejia had a prior serious felony conviction (§§ 667, subds. (b)–(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).

On March 12, North River and its bail agent Bad Boys Bail Bonds posted a bond in the amount of $105,000, to secure Mejia's release on bail.[3] The bail bond noted that Mejia was ordered to appear in court on March 28. Mejia failed to appear at the March 28 hearing and the trial court forfeited bail, issuing a no bail warrant for Mejia's arrest.

At a hearing on April 3, Mejia appeared with counsel. The trial judge opened the hearing by providing a "little bit of [procedural] history," as follows: "The matter was set for discussion and plea on March 28. The prosecution made a four year offer, and you

---

[2] Unspecified statutory references are to the Penal Code.

[3] The bail bond provides: "THE NORTH RIVER INSURANCE COMPANY hereby undertakes that [Mejia] … will at all times hold [himself] amenable to the orders and process of the court and if convicted, will appear for pronouncement of judgment or grant of probation, or if [he] fails to perform either of these conditions, that THE NORTH RIVER INSURANCE COMPANY will pay to the People of the State of California the sum of one hundred and five thousand [dollars] ($105,000) subject to applicable legal provisions. [¶] If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith against the said THE NORTH RIVER INSURANCE COMPANY for the amount of its undertaking herein as provided by Sections 1305 and 1306 of the Penal Code."

2

[i.e., defense counsel] were looking for 32 months which I said I would agree to that. [¶] [The district attorney] agreed to that day only, but your client wasn't here, and the court issued a bench warrant." Defense counsel presented a "letter of reassumption" of the bond which the trial judge signed. The minute order indicates that the court set aside the forfeiture and reinstated the bail bond.

The district attorney stated that Mejia was prepared to proceed with an "open plea" in which he would plead to the three charged felonies and admit the prior serious felony and prior prison term enhancement allegations. The trial judge, after noting that Mejia had executed a plea agreement form,[4] formally advised him of his rights. Mejia acknowledged that he understood his rights, then pleaded no contest to the charges and admitted the enhancement allegations. The trial judge found Mejia guilty on all three counts and found the enhancement allegations proven. Defense counsel confirmed that Mejia waived time for imposition of judgment. The trial judge set a hearing for June 3 at 9:00 a.m., which the minute order indicates was for "Prob[ation]/Sent[encing]" and "Remand." The trial judge expressly stated that Mejia would "be remanded at that time [i.e., at the June 3 hearing]."

When Mejia did not appear at the June 3 hearing, the trial court ordered bail forfeited and issued a no bail bench warrant for his arrest. The court notified North River of the forfeiture on July 1. After North River obtained an extension of time under section 1305.4 and unsuccessfully moved to set aside the forfeiture, the trial court entered summary judgment in favor of the People on November 24, 2020.

---

[4] In that form, Mejia initialed the box next to the following language: " 'Cruz' Waiver (if applicable) — I understand if I willfully fail to appear for future court dates, I will lose the benefit of any plea agreement. The sentencing judge could then impose a different or greater punishment up to the maximum possible sentence, and I would not be allowed to withdraw my plea because of that different or greater punishment."

3

North River appealed from that judgment on December 15, 2020, but failed to file an opening brief so we dismissed its appeal on June 30, 2022. (*People v. The North River Ins. Co., et al.,* (June 30, 2022, H048906, app. dism.).) North River did not petition for review to the California Supreme Court and we issued our remittitur on September 2, 2022.

On April 14, 2023 (seven months later), North River filed a motion in the trial court to set aside the summary judgment, vacate forfeiture, and exonerate the bond. In that motion, North River argued that the trial court lacked jurisdiction to declare forfeiture on June 3 because it had pronounced sentence on Mejia at the April 3 hearing. The People opposed the motion and, in a written order dated June 14, 2023, the trial court denied it. In that order, the trial court stated that judgment was not pronounced at the April 3 hearing but that the court "gave an indicated sentence … and [] scheduled sentencing and judgment for June 3."

The instant appeal followed.

## II. DISCUSSION

### A. *North River has not forfeited its right to appeal*

Before turning to the merits, we briefly address the County's argument that North River is seeking to collaterally attack a judgment that has long been final and that we should therefore affirm the trial court's order and judgment on the grounds the appeal is procedurally barred. We disagree.

The California Supreme Court has explained, "Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack *at any time*.' [Citation.] [¶] … ' "[W]hen a statute authorizes [a] prescribed procedure, and the

4

court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.]  When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable.  [Citations.]  That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.]  Errors [that] are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–661, italics added.)  "Where the bond does not exist because it was exonerated, the court lacks fundamental jurisdiction, and any summary judgment purportedly entered on that bond is void.  [Citation.]  When the summary judgment entered on a bail bond is void, that judgment is subject to attack at any time.  [Citation.]" (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595–596.)

North River's appeal is premised on its contention that the trial judge pronounced judgment on Mejia at the April 3 hearing, at which point the bond was exonerated by operation of law.  The necessary consequence of that exoneration would be that the trial court lacked fundamental jurisdiction to subsequently forfeit bail and enter summary judgment.  As a result, if North River's position is correct, the judgment would be void and it is not barred from attacking it, either in the trial court or on appeal.

We now examine the merits of North River's jurisdictional claim.

5

### B. Judgment was not pronounced on April 3

#### 1. Applicable legal standards

##### a. Bail forfeiture

"The purpose of bail and its forfeiture is to ensure a criminal defendant's appearance in court and adherence to court orders. [Citation.] A bail bond is a contract between the court and a surety whereby the surety promises that a defendant released from custody will appear in court when ordered. If the defendant fails to appear, the surety becomes a debtor for the bond amount. [Citation.] Bail is forfeited when a defendant fails to appear as ordered before judgment is pronounced." (*People v. Lexington National Ins. Corp.* (2016) 1 Cal.App.5th 1144, 1147 (*Lexington National*).) Section 1195 states in part that "[i]f the defendant, who is on bail, does appear for judgment and judgment is pronounced upon him[, her, or them] or probation is granted to him[, her, or them], then the bail shall be exonerated." Unlike a judgment, "an indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing. Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing …." (*People v. Clancey* (2013) 56 Cal.4th 562, 576.)

The law disfavors bail forfeiture, and bail statutes are strictly construed to avoid forfeiture. (*People v. Frontier Pacific Ins. Co.* (1998) 63 Cal.App.4th 889, 894 (*Frontier Pacific*).) However, a surety bears the burden of establishing that a bail forfeiture should be set aside. (*People v. American Surety Ins. Co.* (2001) 88 Cal.App.4th 762, 768 (*American Surety*); see *People v. International Fidelity Ins. Co.* (2017) 11 Cal.App.5th 456, 461 ["The surety has the burden of showing, with competent evidence, that a forfeiture of its bail should be set aside."].)

##### b. Standard of review

The parties disagree on the standard of review we must apply to resolve this appeal. North River asserts that, because we are only deciding a legal issue, we conduct

an independent review of the order and judgment. The County contends that an order denying a motion to set aside a bail forfeiture is instead reviewed under the abuse of discretion standard. We agree with North River.

"An order denying a motion to set aside a bail forfeiture is reviewed under the abuse of discretion standard. [Citation.] Under this standard, the trial court's decision will be affirmed on appeal unless it ' " 'exceeds the bounds of reason, all circumstances being considered. [Citation.]' " [Citation.]' [Citations.]" (*Lexington National*, *supra*, 1 Cal.App.5th at p. 1147.) However, " ' "the abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." ' [Citations.] '[W]here, as here, the facts are uncontested, and the issue concerns a pure question of law, we review the decision de novo.' [Citations.]" (*County of Yolo v. American Surety Co.* (2019) 43 Cal.App.5th 520, 524.)

### 2. Analysis

Based on our independent review of the record, we agree with the trial court that judgment was not pronounced at the April 3 hearing, and the court thus had jurisdiction to forfeit bail when Mejia failed to appear at the June 3 hearing.

On April 3, the trial judge first summarized the plea discussions from the March 28 hearing (at which Mejia had failed to appear) before ensuring that Mejia understood and waived his rights. After the trial judge accepted Mejia's open plea to the charges and enhancement allegations, it found him guilty on all three counts and found that the enhancements had been proven. After Mejia "[w]aive[d] time for imposition of judgment[,]" the trial judge set a hearing for June 3, for that very purpose, i.e., imposition of judgment. At no point during the April 3 hearing did the trial judge ask Mejia, as

7

required by statute, whether there was "any legal cause to show why judgment should not be pronounced against him." (§ 1200.)[5] The trial judge also did not discuss, let alone impose, any fines, fees, or restitution, nor did he award custody credits.[6]

We are not persuaded by North River's reliance on that part of the April 3 hearing where the trial judge said, "Waived referral and victim notification and calculation of credits" before affirmatively responding to the clerk's query, "32 months in CDCR?"[7] North River misapprehends what occurred. It would be reasonable to infer from the record that since the trial judge indicated that Mejia would not be sentenced to probation and would in fact be sentenced to state prison, "waived referral" to probation reflected there was no need for the probation department to prepare a detailed report.[8]

---

[5] Section 1200 provides: "When the defendant appears for judgment he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him and of his plea, and the verdict, if any thereon, and *must be asked whether he has any legal cause to show why judgment should not be pronounced against him*." (Italics added.)

[6] Each of these are important components of a defendant's sentence. For example, "section 2900.5, subdivision (a) provides that all days of custody of the defendant shall 'first be applied to the term of imprisonment' and then to 'any fine … including, but not limited to, base fines and restitution fines … .' " (*People v. Robinson* (2012) 209 Cal.App.4th 401, 406–407.) Furthermore, where the trial court fails to pronounce mandatory fines, we will remand the matter for it do so. (See, e.g., *People v. Zackery* (2007) 147 Cal.App.4th 380, 387–389 [when a court fails to orally pronounce mandatory fines under sections 1202.4 or 1202.45, the appropriate remedy is to remand rather than have either the clerk or the appellate court unilaterally change the written order].)

[7] The minute order from the April 3 hearing includes a handwritten note, "32 Mo CDCR" in the space following the preprinted words "Prison Term of."

[8] "A probation report is required following every felony conviction in this state. (Pen. Code, § 1203c.)" (*People v. Otto* (2001) 26 Cal.4th 200, 212.) In addition, section 1191 provides: "In a felony case, after a plea, finding, or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court shall appoint a time for pronouncing judgment, which shall be within 20 judicial days after the verdict, finding, or plea of guilty, during which time the

8

Furthermore, assuming the trial judge was pronouncing sentence on April 3, and thus exonerating the bail, there would have been no reason for it to sign the reassumption letter or for the clerk to only note on the minute order that bail had been reinstated, not exonerated.

In *American Surety*, *supra*, 88 Cal.App.4th 762, the defendant pleaded no contest in exchange for a middle term prison sentence of 36 months. (*Id*. at p. 764.) After the defendant failed to appear at the subsequent sentencing hearing, the trial court forfeited surety's bond and then denied the surety's motion to vacate summary judgment. (*Id*. at pp. 764–765.) The court of appeal rejected the surety's argument that the trial court "pronounced judgment" when it "adjudged [defendant] guilty and indicated what his sentence would be …." (*Id*. at p. 766, fn. 3.) Instead, the trial court "merely told [defendant] what his sentence would be if he timely appeared" at his sentencing hearing. (*Ibid*.)

The court further noted that the defendant's "plea agreement contained a provision known as a '*Cruz* waiver[,]' [and] [u]nder that provision, if [defendant] was late for … or failed to appear for his sentencing hearing, the court could treat [his] plea as an 'open plea,' and sentence him to the high term." (*American Surety*, *supra*, 88 Cal.App.4th at p. 764, fn. omitted.) This was described as a "carrot-and-stick approach" because "[w]hen [defendant] struck his deal with the People, he was not just given an indication of what his sentence would be" if he appeared for sentencing, he was "also told that if he did not

court *shall* refer the case to the probation officer for a report if eligible for probation and pursuant to Section 1203." (Italics added.)

Section 1203, subdivision (b)(1) provides: "Except as provided in subdivision (j), if a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court *shall* immediately refer the matter to a probation officer to investigate and report to the court, at a specified time, upon the circumstances surrounding the crime and the prior history and record of the person, which may be considered either in aggravation or mitigation of the punishment." (Italics added.)

[] appear [at his sentencing hearing], the court would have the option of sentencing him to the high term." (*Id.* at p. 767.)[9]

Like the defendant in *American Surety*, Mejia agreed to both an open plea and a *Cruz* waiver. Accordingly, he was on notice that the trial judge's reference to 32 months was an indicated sentence and that he was required to appear at the June 3 hearing or risk imposition of a greater sentence. North River does not argue Mejia did not comprehend the terms of his signed plea agreement form dated April 3, especially where he acknowledged his understanding that "the court has given a non-binding, tentative indicated sentence of: State Prison for 32 months …" and that "the court is not required to follow any tentative, indicated sentence."

North River's citations to *People v. Safety National Casualty Corp.* (2007) 150 Cal.App.4th 11 and *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663 (disapproved on other grounds in *People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 716, fn. 5), are inapposite. In both of those cases, it is clear that the trial court pronounced judgment against the defendant, whereas here, the trial judge provided only an indicated sentence and set a subsequent hearing date for pronouncement of judgment.

---

[9] Contrary to North River, we do not read *American Surety* as requiring an *oral* advisement by the trial judge as to the consequences of failing to appear at the subsequent hearing. In describing the plea hearing, the *American Surety* court states the following: "The court found there was a factual basis for the plea, found [defendant] guilty, and convicted him on that day. A probation and sentencing hearing was scheduled for August 19, 1998, [defendant] was ordered to appear for the hearing, and bail was ordered to stand." (*American Surety*, *supra*, 88 Cal.App.4th at p. 764.) The only discussion in the opinion regarding the consequences which would befall the defendant should he fail to appear were those set forth in the written plea agreement, specifically the *Cruz* waiver. (*Ibid.*, fn. omitted.) In our view, the *American Surety* court was relying on this written advisement to put the defendant on notice.

10

We further reject North River's assertion that the trial court committed "judicial error" by relying on the minutes to decide whether the trial judge pronounced judgment on April 3. "[T]he court's minutes [] are, of course, no less a part of the record than the transcript of the oral proceedings." (*People v. Ranger Ins. Co.* (1993) 19 Cal.App.4th 353, 356–357.) Neither trial courts nor courts of appeal are precluded from looking to the relevant minute orders or other documents in the record to resolve issues relating to forfeiture of bail. (See *Frontier Pacific*, *supra,* 63 Cal.App.4th at p. 895 ["reviewing court may look to the reporter's transcript, as well as the minutes, to supply a sufficient record of sufficient excuse [for defendant's failure to appear]."]

We agree that, because rendering judgment is an " 'oral pronouncement' … a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal. 3d 466, 471.) However, we are not confronted here with any such discrepancy, nor was the trial court. To the extent that the trial court relied on notations in the minute order to support its conclusions as to the meaning of the trial court's oral pronouncements at the April 3 hearing, those notations were entirely consistent with the trial judge's intent to provide an indicated sentence.

Accordingly, the record shows that the trial judge provided an indicated sentence at the April 3 hearing and did not pronounce judgment on Mejia. It therefore necessarily follows that the bond was not exonerated at that hearing and the trial judge had jurisdiction to forfeit the bond on June 3 when Mejia failed to appear. Because we agree with the trial court's conclusion, we will affirm its order and the associated judgment.

### III. DISPOSITION

The order denying North River's motion to vacate the forfeiture and exonerate the bond and the trial court's entry of judgment on the bond are affirmed. The County shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)

11

_____
WILSON, J.

WE CONCUR:

_____
LIE, Acting P. J.

_____
BROMBERG, J.

*The People v. The North River Ins. Co. et al.*
H051424