[No. F043190. Fifth Dist. Apr. 18, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER MILES RICHTER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Kathleen A. McKenna and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ARDAIZ, P. J.**—In July of 1997 then 18-year-old appellant Christopher Miles Richter stole over $5,000 worth of items from his ex-girlfriend's home while she and her family were away on vacation. In January of 1998, pursuant to a plea agreement, appellant pled guilty to a violation of Penal Code section 487, subdivision (a) (grand theft exceeding $400),[1] and the trial court suspended appellant's sentence, placed him on three years' probation and ordered him to serve one year in the county jail.

In August of 1999 appellant failed multiple drug tests and failed to report to his probation officer. He was found in violation of probation and after failing to appear, a bench warrant issued for his arrest.

Appellant was not picked up on the bench warrant until 2002. Despite his having absconded from probation, the trial court continued appellant on probation and ordered him to serve 90 days in custody, but allowed him to do it in a work release program. His probation was extended until 2004.

In January of 2003 appellant was involved in an altercation that again resulted in revocation of probation. During the revocation proceedings the trial court determined that appellant was not entitled to 112 days of custody credit for the time he spent in work release in 2002. The court found the aggravating factors to outweigh the mitigating factors and sentenced appellant to the upper term of three years for the 1997 grand theft conviction. Appellant was awarded custody credits of 241 days, which did not include his time in work release, as well as 120 days' good/work credits. He timely appeals, contending he was entitled to custody credits for the time he spent in a work release program pursuant to 4024.2. He also contends in supplemental briefing that his upper-term sentence violated his constitutional rights. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

## DISCUSSION

### I.

### *Section 4024.2 Does Not Provide for Custody Credits*

Appellant's first claim on appeal is that the trial court erred in denying him custody credits for the time he spent in the work release program pursuant to section 4024.2. Section 4024.2 provides, in pertinent part: "(a) Notwithstanding any other law, the board of supervisors of any county may authorize the sheriff or other official in charge of county correctional facilities to offer a voluntary program under which any person committed to the facility may participate in a work release program pursuant to criteria described in subdivision (b), in which one day of participation will be in lieu of one day of confinement. . . ."

Appellant maintains that because, pursuant to section 2900.5, subdivision (b),[2] a period of confinement entitles him to credit upon imprisonment that he is entitled to credit for the time he spent in work release. He argues that because the work release statute specifies that "one day of participation [in work release] 'will be *in lieu of* one day of confinement' " that the time spent in work release entitles him to custody credit. He claims "rationality dictates that work release pursuant to section 4024.2 results in custody credit. Otherwise, one day of work release could not be in place of one day of confinement, and the language of 4024.2 . . . would be superfluous." His argument misses the mark.

■ While "in lieu of" may mean "in place of" it does not mean appellant was "in custody." Rather, the statute allowed appellant to serve time in work release in place of, in lieu of, or *instead of* being in custody. However, in order for an inmate to get any custody credits under section 2900.5 he must actually be *in custody.* The People and the sentencing court both relied on *People v. Wills* (1994) 22 Cal.App.4th 1810 [27 Cal.Rptr.2d 925] (*Wills*), for the proposition that a work project participant is not in custody and therefore is not entitled to custody credits. In *Wills,* the defendant was seeking to receive conduct and work credit for his time spent in a work release program pursuant to section 4019 (conduct and work credits), which requires that a prisoner be in actual custody to receive the credits. (*Wills, supra,* at p. 1810.)

---

[2] Section 2900.5 provides, in pertinent part:

"(A) In all felony and misdemeanor convictions, either by plea or by verdict, *when the defendant has been in custody*, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, *all days of custody* of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." (Italics added.)

The court in *Wills* denied the defendant any work/conduct credits, holding that a work release participant is not in custody. (*Id.* at p. 1813.) Appellant maintains that *Wills* is inapplicable because it only addressed conduct credit, not custody credit. We disagree. To the contrary, the *Wills* court's reasoning is directly on point: "No possible reading of section 4024.2 would support the conclusion a probationer participating in [work release] is *in actual custody* for the purpose of section 4019 conduct and work credits. To the contrary, if the [work release] participant fails to appear for work or even fails to work as assigned, a peace officer may 'retake the person into custody . . . to complete the remainder of the original sentence.' That a [work release] probationer works each day 'in lieu of one day of confinement' (§ 4024.2, subd. (a)) does not make the arrangement custodial. Hence, [work release] is not custodial, and section 4019 credits may not be awarded for [work release] time." (*Wills, supra*, 22 Cal.App.4th at p. 1813.)

Appellant draws no meaningful distinction between conduct credits and custody credits to make the *Wills* court's analysis inapplicable here. If anything the *Wills* analysis is even more appropriate with respect to custody credits since section 2900.5 specifies that the defendant must be in custody.[3]

■ Additionally, in *People v. Cortez* (1994) 24 Cal.App.4th 510 [29 Cal.Rptr.2d 445], the Third District concluded that the defendant had not suffered a "prior conviction" for purposes of her petty theft with a prior conviction charge because her time had been served in work release, not in custody. In reaching this conclusion they observed, "[u]nder section 4024.2 a work release program participant performs eight to ten hours of labor 'in lieu of' one day of confinement. (§ 4024.2, subds. (a), (b)(4).) 'In lieu of' clearly implies that a participant may perform the labor or serve the day in confinement, but not both." (*People v. Cortez, supra*, 24 Cal.App.4th at pp. 512–513.) And, as set forth below, appellant's argument is further undermined by the fact that section 4024.3, which governs under what circumstances a work release program may be mandatory, specifically provides that under that section work release participants *are* entitled to custody credits. Thus, the Legislature knew exactly how to provide custody credits under a work release program and expressly chose not to do so under section 4024.2. In sum, a work release participant is not in custody and we therefore hold that, absent a legislative directive to the contrary, custody credits should not be given to a defendant for time spent in a work release program under section 4024.2.

---

[3] Accordingly, we reject appellant's simple assertion that *Wills* is simply inapplicable because "this case does not involve section 4019."

## II.

### *Section 4024.2 Does Not Violate Equal Protection of the Law*

Appellant next contends that if we are to read section 4024.2 to mean that appellant is not entitled to custody credits for his participation in work release then the statute violates the equal protection clauses of the United States and California Constitutions because another work release statute, section 4024.3, *does* allow conduct credits. In contrast to section 4024.2, section 4024.3 provides, in relevant part: "(a) Notwithstanding any other law, the board of supervisors of any county in which the average daily inmate population is 90 percent of the county's correctional system's mandated capacity may authorize the sheriff or other official in charge of county correctional facilities to operate a program under which any person committed to the facility is required to participate in a work release program pursuant to criteria described in subdivision (b) of Section 4024.2. *Participants in this work release program shall receive any sentence reduction credits that they would have received had they served their sentences in a county correctional facility.*" (Italics added.)

### A. *Inmates Participating in Work Release Under Sections 4024.2 and 4024.3 Are Not Similarly Situated*

 Appellant maintains that "an inmate's denial or entitlement to custody credit under [section 4024.2] is so dependent on the happenstance of the particular county in which they are incarcerated seems to lend itself to the conclusion that the distinction is without a legitimate public interest." We disagree. The constitutional guarantee of equal protection does not require that all persons receive identical treatment, but only that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 12 [104 Cal.Rptr.2d 247].) "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Without such a showing, the claim of error fails. We reject the premise of appellant's argument, that is, that persons in a work release program under sections 4024.2 and 4024.3 are similarly situated.[4]

---

[4] The People state that "participants in the two programs appear to be similarly situated" presumably because the work release programs themselves are identical, and concedes the issue. As set forth above, we disagree. Further, while we agree with the People's position that the state has a legitimate interest in inmate population control, the People fail to explain how denying a section 4024.2 work release participant custody credits furthers that legitimate interest. In other words, while the People aptly state the obvious proposition that granting

■ "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].) "Persons who are similarly situated must be treated alike. [Citation.] There is, however, no requirement that persons in different circumstances must be treated as if their situations were similar. [Citation.]" (*People v. McCain* (1995) 36 Cal.App.4th 817, 819 [42 Cal.Rptr.2d 779].) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated *for purposes of the law challenged.*' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654], italics added.) " 'The use of the term "similarly situated" in this context refers only to the fact that " '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' " ' " (*People v. Jones* (2002) 101 Cal.App.4th 220, 227 [124 Cal.Rptr.2d 10]; see also *People v. Goslar* (1999) 70 Cal.App.4th 270, 277 [82 Cal.Rptr.2d 558].)

Appellant recognizes that there is a legitimate public interest in reducing inmate overcrowding. He contends, however, that denying him custody credits (in a county not suffering from overcrowding) does nothing to reduce overcrowding in some other county. Therefore, he argues, the state's legitimate interest of reducing inmate overpopulation is unaffected by (and thus not rationally related to) his decision to volunteer for work release. Appellant's argument completely ignores, however, that in volunteering for work release he was conferring a benefit on himself, i.e., he remained out of custody. On the other hand, to the extent an inmate "volunteers" for work release in a county at 90 percent capacity he is simply cooperating with a program that would otherwise *require* release from the county jail. Thus, in a crowded county, a person who would otherwise remain in custody (and hence accrue credits) is forced to leave custody to benefit *the county*. Conversely, an inmate in a less populated county jail facility *chooses* to leave custody to benefit *himself*. The issue is therefore not a question of unequal treatment *under the law* since in the latter situation the *inmate* has chosen the benefit of

---

custody credits under section 4024.3 serves the legitimate purpose of inmate population control in an overcrowded county, the People fail to explain the relationship between *denying* custody credits to someone in a non-overpopulated county in order to control the inmate population in some other county. If section 4024.2 inmates are similarly situated to section 4024.3 participants they should receive "like treatment" absent a legitimate state interest in denying that like treatment. As set forth in the next section of this opinion we do believe such a legitimate state interest exists, but it is not the sole interest of controlling inmate overpopulation relied on by the People.

remaining out of custody. Thus, the law has not treated him unequally, he has chosen that treatment for himself.

Appellant attempts to sidestep this flaw in his equal protection argument by contending that he is, if nothing else, receiving unequal treatment with respect to those who *volunteer* for work release under section 4024.3. He claims that "being able to require participation for section 4024.3 counties, [*sic*] hardly appears to constitute a basis to deny credit for participants in other counties, especially when their own volunteers would be entitled to credit." Again, we are not persuaded. Section 4024.3, subdivision (a) specifies that "any person committed to the facility *is required* to participate in a work release program . . ." and then goes on to allow that, "[p]riority for participation in the work release program shall be given to inmates who volunteer to participate in the program." (*Ibid.*, italics added.) Thus, all "volunteer" means in this context is that inmates who cooperate with being forced into work release will be released ahead of any who would prefer to remain in a jail but are released anyway. Either way, the "volunteers" under section 4024.3 can be required to participate in the work release program to prevent overcrowding and, accordingly, the Legislature has reasonably decided they are entitled to credit they would otherwise receive were they allowed to remain in custody. Appellant is thus not similarly situated to a "volunteer" under section 4024.3 since one chooses the work release program to benefit himself (as appellant did) and the other will be placed on work release to benefit the county whether he wants to or not.

■ Further, the primary purpose behind section 4024.2 is to allow appropriate candidates an opportunity to avoid jail time (and hence confer a benefit on themselves) by volunteering to participate in a work release program. The primary purpose behind section 4024.3 is to force participation in work release programs to avoid inmate overcrowding (and hence confer a benefit on the county.) Thus work release participants under section 4024.2 and work release participants under section 4024.3 are not "similar *with respect to the purpose of the law in question.*" (*People v. Nguyen, supra,* 54 Cal.App.4th at p. 714, italics added.) Because the aims of the two statutes are different, and because inmates under section 4024.2 get to choose work release for their own benefit, the two classes of inmates are not similarly situated for equal protection purposes. (See *In re Eric J., supra,* 25 Cal.3d at p. 531 [no basis for equal protection claim with respect to juvenile offenders since purpose and aim of juvenile sentencing (treatment and rehabilitation) is different from purpose and aim of adult sentencing (deterrence, isolation and rehabilitation)].) Appellant's claim thus fails the threshold "similarly situated" requirement for an equal protection claim.

## B. *The Statute Survives Rational Basis Scrutiny*

In any event, even if we were to accept appellant's position that "volunteers" for work release under sections 4024.2 and 4024.3 were similarly situated, appellant's equal protection claim still fails because there is a rational basis for treating inmates differently under the circumstances set forth in sections 4024.2 and 4024.3. Legislation not affecting a fundamental right satisfies the requirements of equal protection if it bears a rational relationship to a legitimate state purpose. (*People v. Gonzales, supra,* 87 Cal.App.4th at pp. 12–13.) Appellant thus appropriately acknowledges that we need only determine whether the Legislature's decision to give custody credits to inmates in overcrowded counties—and to deny them to those in other counties—bears a rational relationship to a legitimate state purpose. (*People v. Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015]; *People v. Gonzales, supra,* at pp. 12–13.) He claims, however, that "any connection between custody credit, [*sic*] and operating at over 90 percent capacity are too remote from each other to constitute a legitimate basis."

To the contrary, a rational basis for this is apparent. The state clearly has a legitimate interest in preventing overcrowding of county jail facilities. The state also has a legitimate interest in encouraging incarceration over work release where there is room in the facility to incarcerate. In other words, the state can reasonably prefer to have convicted criminals confined to jail instead of on work release, so where no benefit inures to the county for work release (and it is not required) it is reasonable for the state not to reward it. "The concept [of equal protection] recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not, however, require absolute equality. [Citations.] Accordingly, a state may provide for differences as long as the result does not amount to invidious discrimination. [Citations.]" (*People v. Romo, supra,* 14 Cal.3d at p. 196.) The Legislature's conclusion that work release should only be rewarded with custody credits when there is no choice for the participant but to be on work release withstands rational basis scrutiny. Accordingly, we agree that the rational basis test applies and that there is such a basis for the differences in treatment of custody credits for inmates under sections 4024.2 and 4024.3.

### III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 575.

## DISPOSITION

The judgment and sentence are affirmed.

Levy, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 2005. George, C. J., and Baxter, J., did not participate therein.