Filed 1/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br>v.<br>ELIAN ANGEL MENDOZA DAVIS,<br>  Defendant and Appellant. | A164046<br><br>(San Mateo County<br>Super. Ct. No. 20-SF-001498-A) |

Defendant was charged with raping an intoxicated person.  While he was out on bail for that offense, he was arrested for possessing percocet without a prescription.  Shortly after the latter arrest, but before the resolution of all charges, defendant voluntarily enrolled in a residential drug treatment program.  Later, defendant pleaded no contest to the charge of raping an intoxicated person in return for a three-year prison sentence and dismissal of all other charges.  Defendant contends the trial court erred in refusing to award him presentence custody credits for the time he spent in a residential drug treatment program.  We disagree.  Accordingly, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to defendant's sentencing brief filed in the trial court, which we summarize, defendant and the 16-year-old victim, C.W., met at a party hosted by C.W.'s sister-in-law.[1]  Alcohol was served at the party, and C.W.

[1] We take the facts from defendant's sentencing brief as it is the only document in the record describing the rape offense.

and others at the party, including defendant, drank alcohol. C.W. also smoked marijuana while upstairs in a bedroom. Other partygoers saw C.W. vomit several times.

Between 2:00 a.m. and 3:00 a.m., defendant, another partygoer, M., and C.W. went to sleep in a bedroom where defendant lay in bed near M. and C.W. Around 5:00 a.m., J. heard moaning coming from the master bedroom of the house and also heard a female voice say " 'ow.' " He looked into a bedroom and saw that M. was sleeping alone. He asked M. where C.W. was and she said she did not know. When J. knocked on the master bedroom door and told the occupants to go downstairs, C.W. came out of the room sobbing. Defendant came out of the same bedroom and apologized stating, " 'I didn't mean to hurt anyone,' " and left the house.

Hospital personnel interviewed C.W. and determined she was not intoxicated. As a result of the incident, C.W. suffered serious injuries.

The rape occurred on January 26, 2020, and defendant was booked the same day. Defendant posted bail two days later. Almost six months later, on July 23, 2020, defendant was arrested for possession of percocet without a prescription.[2] He voluntarily entered "Center Point," a residential treatment program, for 90 days on August 10 that same year.

On December 21, 2020, defendant was charged in an information with forcible rape of a child victim over 14 years (Pen. Code,[3] § 261, subd. (a)(2)), rape by use of drugs (§ 261, subd. (a)(3)), sexual penetration by foreign object of a minor over 14 years (§ 289, subd. (a)(1)(C)), sexual penetration by foreign object of an intoxicated person (§ 289, subd. (e)), four counts of assault with

_____

[2] This timeline is based on the prosecutor's representation to the court during the sentencing hearing. Defendant did not object.

[3] All statutory references are to the Penal Code.

intent to commit rape (§ 220, subd. (a)(2)), forcible oral copulation with a minor over 14 years (§ 287, subd. (c)(2)(C)), and oral copulation by anesthesia or controlled substance (§ 287, subd. (i)).

Defendant pleaded no contest to raping an intoxicated person in return for a three-year prison sentence and dismissal of all other charges. As we will discuss in further detail, during the sentencing hearing, the trial court denied defendant's request to receive 90 days of custody credits against his three-year term based on his voluntary time spent at a residential drug treatment program.

## II.  DISCUSSION

Defendant contends he is entitled to presentence custody credits for the time he spent in Center Point, which he characterizes as a residential custodial treatment program.

### A.  The Sentencing Hearing

Prior to defendant's sentencing hearing on the rape conviction, his counsel filed a sentencing brief in which she represented, "defendant was intoxicated when this [incident] happened, and the alcohol consumption coupled with the consumption of drugs contributed to a decision that otherwise would not have been made. The defendant struggled with substance abuse and took responsibility for it by going into a rehabilitation program." In addition to consuming alcohol and marijuana, defense counsel stated defendant was under the influence of percocet.

Defense counsel acknowledged in the sentencing brief that after the rape incident, defendant was arrested for possession of percocet but had "voluntarily entered 'Center Point' which offered a residential treatment program and stayed in the residential treatment program for 90 actual days."

In speaking to an "SUD Treatment Counselor,"[4] counsel said she learned Center Point "is an intensive residential treatment program . . . licensed and certified . . . to provide such treatments."[5] Counsel asserted Center Point "is equivalent to a custodial setting since participants are only permitted to attend medical appointments and court dates only upon prior approval of their counselor and with support only. Otherwise, participants must remain within the facility and attend groups during the day and at night." Counsel further represented, "The facility is locked at all times."

The prosecutor, in her sentencing memo, countered defendant could not receive credits for his voluntary enrollment in Center Point because he did not enter the program pursuant to a court order, his stay in the program was not attributable to the proceedings related to the rape offense, and even if the trial court were to consider defendant's request for custody credits from his Center Point stay, he failed to present any information regarding the dates of his admission to and release from the program.

At the sentencing hearing, the prosecutor emphasized defendant could not receive credits for his time at Center Point because his stay was not pursuant to a court order, and the program had not been vetted by the court, probation, or the district attorney's office. Because the probation officer was unfamiliar with Center Point, the prosecutor informed the court she had printed out the program's pamphlets, which said nothing about whether it was a locked or secure facility.

---

[4] SUD is presumably an acronym for substance use disorder. (<https://www.nimh.nih.gov/health/topics/substance-use-and-mental-health> [as of Jan. 19, 2023].)

[5] It is not clear whether the "SUD Treatment Counselor" was affiliated with Center Point.

The prosecutor again took issue with defendant's argument that since he was "high and drunk at the time of the offense [of rape]," the treatment he received was "a result of this case." After claiming defendant had not been charged with a drug offense, but rape of a minor, the prosecutor commented that she had found no indication Center Point provided sex offender treatment. Then turning to the chronology of events, described above, the prosecutor noted nearly a six-month gap between defendant's arrest on January 26, 2020 for rape and his enrollment in Center Point on August 10, 18 days after his arrest for possession of percocet without a prescription. Thus, according to the prosecutor, just by looking at the dates, defendant's decision to enter a residential treatment program "appear[ed] to have more to do with his subsequent arrest for possession than it [did] for the rape that occurred seven months earlier."

Defense counsel, on the other hand, reiterated the program was a "custodial setting." Counsel stated she had been in contact with "the counselor who provided the letter of participation," and she had an e-mail "here" for the court and counsel to read. Defense counsel represented that the counselor told her the program is "an intensive residential treatment" and "is a custodial setting" in which "[c]lients are only permitted to go to medical appointments upon approval of the counselor and with support." And the "facility is locked at all times."

As to the relationship between the rape offense and defendant's entry into the residential program, defense counsel argued defendant's arrest for percocet went to the larger issue of his drug addiction. Because defendant was under the influence of percocet at the party, counsel maintained his drug use was related to the rape offense and his subsequent entry into the rehabilitation program.

5

In addition, defense counsel stated she had a certificate indicating the dates defendant entered and was released from the program. At this point, the court asked defense counsel if she had copies of "what you are going to say for the court reporter," to which counsel responded, "We can provide that after she reads it verbatim, . . . to the court reporter."

The trial court denied defendant's request for custody credits, first ruling custody credits are "only applicable when there is an actual court order that [the custody] be served." Secondly, the court ruled "on a discretionary basis that the program was not sufficiency [*sic*] related to" the rape offense, noting many crimes are committed when people are under the influence of either alcohol or controlled substances.

## B. Section 2900.5

Section 2900.5, subdivision (a) provides in relevant part: "In all felony . . . convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." "The provisions of Penal Code section 2900.5—entitling a defendant sentenced either to county jail or state prison to credit against the term of imprisonment for days spent in custody before sentencing . . . apply to custodial time in a residential treatment facility . . . ." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 318.)

## C. Defendant Is Not Entitled to Custody Credits

Section 2900.5 has two components: First, " 'that the placement be "custodial," ' " and second, " 'that the custody be attributable to the proceedings relating to the same conduct for which defendant has been

6

convicted.' " (*People v. Davenport* (2007) 148 Cal.App.4th 240, 245; § 2900.5, subd. (b).)

As to the first component, defendant asserts his placement in Center Point was custodial, even in the absence of a court order, because the quality of the confinement constituted custody. In support of his assertion, defendant claims that although he voluntarily entered the program, "[t]he intensive residential treatment is equivalent to a custodial setting since participants are only permitted to attend medical appointments and court dates only upon prior approval of their counselor and with support only. . . . Otherwise, participants must remain within the facility and attend groups during the day and at night. . . . The facility is locked at all times."

We are not persuaded. First, defendant cites no authority, and we have discovered none in our own research, supporting his argument that entirely voluntary self-admittance to a residential rehabilitation program— "self-imposed custody" as defendant terms it—can qualify for *custody* credits under section 2900.5.[6] Indeed, all published authority is to the contrary. (See *People v. Tafoya* (1987) 194 Cal.App.3d Supp. 1, 4 [" 'in custody' as used in section 2900.5 cannot be construed to include a defendant's self-imposed stay at a drug rehabilitation facility"]; *People v. Pottorff* (1996)

---

[6] We also reject defendant's cursory argument, raised in a footnote, that failing to award credits in this situation would amount to an equal protection violation. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [party forfeited argument by raising it exclusively in a footnote]; *People v. Lucatero* (2008) 166 Cal.App.4th 1110, 1115, fn. 1 ["A footnote is not a proper place to raise an argument on appeal."].) In any event, we would reject the argument because a defendant who voluntarily enters a rehabilitation program on his or her own initiative is not similarly situated to one who does so under a court order or as a condition of probation because there is no potential penal consequence for his or her failure to complete the program or comply with its requirements.

47 Cal.App.4th 1709, 1717, fn. 9 ["under section 2900.5, only *court-imposed* confinement constitutes custody"]; see also *People v. Richter* (2005) 128 Cal.App.4th 575, 579 ["in order for an inmate to get any custody credits under section 2900.5 he must actually be *in custody*"; participation in voluntary work release program did not entitle defendant to presentence custody credits]; *People v. Darnell* (1990) 224 Cal.App.3d 806, 809 ["A defendant is entitled to credit if he is released on his own recognizance *on condition* he remain in a custodial setting." (italics added)]; *People v. Jeffrey, supra,* 33 Cal.4th at p. 318 [time spent in private residential treatment program as *condition of probation* qualifies for presentence custody credit under § 2900.5, subd. (a)]; 3 Witkin Cal. Criminal Law (4th ed. 2022), Punishment § 472 [listing confinements courts have found eligible for custody credit, including, among others, custody condition of release on own recognizance, mistaken release, home detention program, and time spent in residential drug treatment facility as probation condition].) Defendant was not ordered to complete a drug rehabilitation program, nor was his participation a condition of his release on bail. Because he "volunteered for whatever restraints were imposed on him" at Center Point, he was not "in custody." (*Tafoya,* at p. 5.)

For the first time in his reply brief, defendant relies on *People v. Rodgers* (1978) 79 Cal.App.3d 26 to argue that Center Point's setting qualified as custodial, but that case likewise does not assist him. In *Rodgers,* the defendant was ordered to reside in a drug rehabilitation program as a condition of probation. (*Id.* at p. 28.) By contrast, defendant's participation in the Center Point program here was entirely on his own initiative and not pursuant to any condition of probation or release, or court order. It is undisputed defendant enrolled in the program following his arrest for

possession of percocet and presumably could have walked away from it without suffering any repercussions.  In sharp contrast, if defendant had violated a court order or condition requiring him to enter a residential drug treatment program, he likely would have been subject to some sort of sanction, including a potential penal consequence.  Taken to its logical extreme, defendant's argument would allow anyone to voluntarily enter a drug rehabilitation program and call it "custody."[7]

Even assuming defendant's entry and participation in Center Point constituted actual custody, however, his claim of entitlement to custody credits pursuant to section 2900.5 still fails as to the second component because his stay there was not attributable to the proceedings relating to his rape conviction under section 2900.5, subdivision (b) ("credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted").

In denying defendant's request for custody credits, the court ruled "on a discretionary basis that the program was not [sufficiently] related to" the rape case.  Given the chronology of defendant's arrest for rape and his arrest

_____

[7] We also note defendant bears the burden of proving his entitlement to credits at sentencing.  (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 81.)  Here, defendant failed to introduce any actual, authenticated, or reliable evidence that he was in fact in custody at the time he was in the treatment program.  Defendant's reliance on the second-hand contents of an e-mail, a certificate, and a hearsay conversation with an SUD treatment counselor regarding the Center Point program is insufficient to prove the program is custodial.  Nor does it appear from the record that any documents describing the Center Point program were marked as exhibits, admitted into evidence, reviewed by the trial court, or included in the record.  While there was some reference to reading a document to the court reporter, we have found no transcription in the record.  Because we have determined defendant is not entitled to custody credit for other reasons stated in this opinion, however, we need not determine whether to remand for a further evidentiary hearing.

for possession of percocet almost six months later, the trial court's conclusion that defendant's second arrest rather than the rape offense motivated his entry into the rehabilitation program was reasonable. Moreover, we can infer from the trial court's ruling that it did not credit defendant's asserted motivation for entering Center Point—that his drug addiction and rape offense were related because he was under the influence of percocet at the party. As a reviewing court, we can neither reweigh evidence nor reevaluate a witness's credibility. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) Rather, we presume the trial court's judgment is correct, and we look to the record to determine whether a defendant has met his or her burden of affirmatively demonstrating error. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549–550.) Because defendant has not met that burden here, we affirm.

Defendant argues the requirement under subdivision (b) of section 2900.5 that "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which defendant has been convicted" has "almost exclusively been interpreted and applied in 'dual custody' cases, that is, in cases in which a defendant's imprisonment can be attributed to more than one cause." He then claims the instant case does not involve a "dual custody" situation because he was never imprisoned on either the rape or the drug charges before committing himself to the drug rehabilitation program and, thus, he would have been at liberty during the 90 days he spent at Center Point, " 'were it not for a restraint relating to the proceedings resulting in the later sentence.' "

Under the plain language of the statute, however, presentence custody credit is given only where "the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been

10

convicted," here, the rape charge.  (§ 2900.5, subd. (b); see *People v. Davenport, supra,* 148 Cal.App.4th at p. 245 ["Under section 2900.5, subdivisions (a) and (b), entitlement to credits for time spent in a residential rehabilitation facility depends on whether such participation was a condition of probation *for the same underlying criminal conduct*." (italics added)].)  Although defendant insists the rape and percocet offenses were not necessarily independent of each other, both contributing to his enrollment in Center Point, we do not see it that way.  Each are statutorily independent offenses with different requisite mental states, separated in time by a period of almost six months.  Because the trial court determined defendant's stay at Center Point was not related to proceedings on the rape charge, and defendant has not shown that determination was error, he is not entitled to credit.

In sum, we conclude defendant's enrollment and stay in the Center Point drug rehabilitation program did not constitute custody, and even if his liberty was restrained by his stay there, it was not attributable to his rape offense.

## III.  DISPOSITION

The judgment is affirmed.

MARGULIES, ACTING P. J.

WE CONCUR:


BANKE, J.


DEVINE, J.*


A164046
*People v. Mendoza Davis*

---

\* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12

Trial Court:       San Mateo County Superior Court

Trial Judge:      Hon. Susan Greenberg

Counsel:

David A. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and Amit Kurlekar, Deputy Attorneys General for Plaintiff and Respondent.